1
2
3
4
5

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
505 Lomas Santa Fe Drive
Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

6
7

*Counsel for Plaintiff City of Hollywood*
*Firefighters' Pension Fund*

8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10
11

CITY OF HOLLYWOOD FIREFIGHTERS'
PENSION FUND, Individually and on Behalf
of All Others Similarly Situated,

Case No.:

12

Plaintiff,

13

vs.

**CLASS ACTION COMPLAINT FOR**
**VIOLATIONS OF THE FEDERAL**
**SECURITIES LAWS**

14
15
16
17

ATLASSIAN CORPORATION, ATLASSIAN
CORPORATION PLC, MICHAEL
CANNON-BROOKES, SCOTT FARQUHAR,
ANU BHARADWAJ, and CAMERON
DEATSCH,

**DEMAND FOR JURY TRIAL**

18

Defendants.

19
20
21
22
23
24
25
26
27
28

Plaintiff City of Hollywood Firefighters' Pension Fund ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Atlassian Corporation ("Atlassian U.S.") and Atlassian Corporation Plc ("Atlassian UK," and, together with Atlassian U.S., "Atlassian" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Atlassian's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons or entities who purchased and/or acquired Atlassian ordinary shares and/or common stock between August 5, 2022 and November 3, 2022, inclusive (the "Class Period") against Atlassian and certain of its officers (collectively "Defendants") seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act").

2.      Atlassian develops and sells collaboration and project-management software that operates both on premises and in the cloud.  The Company derives a majority of its revenue from its Jira Software and Confluence software products.  The Company generates revenue primarily from license subscriptions both from free users who convert to paying customers when they exceed the cap on free licenses, and from existing paying users who expand their existing subscriptions. In 2020, Atlassian began to transition its clients to the cloud, which has accounted for a rapidly growing portion of the Company's revenues.

3.      In the spring and summer of 2022, as macroeconomic conditions deteriorated and Atlassian's competitors lowered their revenue guidance, Defendants remained steadfast that these

conditions were not having a material impact on the Company.  Indeed, after markets closed on August 4, 2022, Defendant Co-Chief Executive Officer Scott Farquhar reiterated the Company's guidance of 50% year-on-year cloud growth for fiscal years 2023 and 2024.  In a call with analysts that day, more than a month into the Company's fiscal first quarter of 2023, Defendant and Chief Revenue Officer Cameron Deatsch assured investors the Company was "being exceedingly vigilant watching all stages of our funnel" and that "we have yet to see any specific trend . . . that gives us pause or worry to date."  According to CRO Deatsch, the "demand for collaboration products continue[s] to be strong."

4.      Undisclosed to investors, throughout the Class Period, Atlassian overstated its financial guidance by concealing trends of slowing conversions from free users to paying customers and slowing growth in paying-user expansion.  As a result, Defendants' positive statements about the Company's business, operations, and prospects during the Class Period were materially false and /or misleading.

5.      Investors only learned the truth about the Company's vulnerability to macroeconomic conditions and weakened outlook after the financial markets closed on November 3, 2022.  That afternoon, Atlassian issued a letter to shareholders and held a conference call with analysts to discuss its financial results for the fiscal first quarter of 2023 ended September 30, 2022.[1]  In the letter to shareholders, filed as an Exhibit to a Current Report on Form 8-K, the Defendants revealed that "[b]ased on the macro headwinds," the Company was "lowering our Cloud revenue growth outlook to a range of approximately 40% to 45% year-over-year" for fiscal year 2023.  In describing the "macro impacts" on the Company, the letter to shareholders revealed that (1) the Company "saw a decrease in the rate of Free instances converting to paid plans," calling it a "trend [that] became more pronounced" in the quarter and (2) the Company experienced "a slowing in the rate of paid user growth from existing customers."

---

[1] The Company's fiscal year ends on June 30 of each year.  References to fiscal years 2022 and 2023 refer to the Company's fiscal years ending June 30, 2022 and June 30, 2023, respectively.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
2

6.     In response to these revelations, the price of Atlassian stock declined almost 29% the following trading day, from a closing price of $174.17 per share on November 3, 2022 to a closing price of $123.73 per share on November 4, 2022.  More than $7 billion in shareholder value evaporated.  Analysts reported being "surprised by the magnitude of the slowdown" as Defendants "delivered unusually disappointing" results.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Atlassian had a large employee presence and operations at its U.S. headquarters in San Francisco throughout the Class Period, and the Company's headquarters have been in this District since at least October 3, 2022.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

3

**DIVISIONAL ASSIGNMENT**

12.     Pursuant to Local Rule 3-2(c) and (d), this action should be assigned to the San Francisco or Oakland Divisions of this Court, as the Company's headquarters are in San Francisco County, California.

**PARTIES**

13.     Plaintiff City of Hollywood Firefighters' Pension Fund is a public pension fund providing benefits for eligible firefighters in Hollywood, Florida.  Plaintiff manages approximately $340 million in assets on behalf of approximately 500 members.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased and acquired Atlassian ordinary shares and common stock during the Class Period, and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Atlassian U.S. is incorporated under the laws of Delaware, with its principal executive offices located in San Francisco, California.  Since Monday, October 3, 2022, Atlassian U.S.'s common stock has traded on the Nasdaq Global Select Market (the "NASDAQ") under the ticker symbol "TEAM."  Atlassian U.S. is the ultimate parent company of Atlassian UK.

15.     Defendant Atlassian UK was a public limited liability company incorporated under the laws of England and Wales and was parent of the Company's operating subsidiary, Atlassian, Inc.  Atlassian UK changed its corporate domicile to the United States effective September 30, 2022.  Atlassian UK's Class A ordinary shares were listed on the NASDAQ and registered pursuant to Section 12(b) of the Securities Exchange Act of 1934 following an initial public offering on December 9, 2015.   The last day of trading in the Atlassian UK Class A ordinary shares on the NASDAQ was the effective date of the redomiciliation – Friday, September 30, 2022.  Upon the change of domicile, each outstanding Class A ordinary share of Atlassian UK was cancelled and exchanged for one share of common stock of Atlassian U.S., and Atlassian UK became a subsidiary of Atlassian U.S., thereby completing the change in domiciliation to the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
4

United States.  Trading in the shares of Class A common stock of Atlassian Corporation on the NASDAQ commenced on October 3, 2022 under the ticker symbol "TEAM," which was also the symbol for the Class A ordinary shares of Atlassian UK.

16.     Defendant Michael Cannon-Brookes ("Cannon-Brookes") is Atlassian's co-founder, co-Chief Executive Officer ("co-CEO"), and a Company Director.

17.     Defendant Scott Farquhar ("Farquhar") is also Atlassian's co-founder, co-CEO, and a Company Director.  From July 1, 2022 through September 5, 2022, Defendant Farquhar also served as Interim Chief Financial Officer of the Company.

18.     Defendant Anu Bharadwaj ("Bharadwaj") has served as Atlassian's Chief Operating Officer ("COO") at all relevant times.

19.     Defendant Cameron Deatsch ("Deatsch") has served as Atlassian's Chief Revenue Officer ("CRO") at all relevant times.

20.     Defendants Cannon-Brookes, Farquhar, Bharadwaj, and Deatsch (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, shareholder letters, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

21.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
5

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Founded in 2002, Atlassian designs, develops, licenses, and maintains collaboration and project-management software.  Unlike traditional enterprise software vendors, Atlassian does not rely on a direct sales force, but instead primarily utilizes a "viral marketing model" to target new customers.  The Company has described this model as "word-of-mouth marketing" in which it offers customers free trials, limited free versions, or affordable starter licenses "in order to promote additional usage, brand and product awareness, and adoption."

23.     For example, on its website, Atlassian lists "plans and pricing" for each of its products.  Atlassian highlights each product is "always free for 10 users."  Once a customer exceeds 10 users, the customer can select from "Standard," "Premium," and "Enterprise" pricing plans, with the price of each increasing as users are added.  As Defendant Deatsch confirmed on August 4, 2022, the Company closely tracks its subscriber metrics and 90% of the Company's revenue in any given year comes from existing customers.  Defendant Farquhar explained the importance of tracking existing subscribers, stating, "that 90% number, we continue to see that, like, that's not likely to change in any particular time."

### Defendants' Materially False and Misleading Statements
### Issued During the Class Period

24.     The Class Period begins on August 5, 2022.  After markets closed the prior day, August 4, 2022, Atlassian filed a Current Report on Form 6-K with the SEC that included a quarterly letter to shareholders regarding the fourth quarter of fiscal year 2022 ("Q4'22 Shareholder Letter"), ended June 30, 2022.  The Q4'22 Shareholder Letter was signed by Defendants Cannon-Brookes and Farquhar.  In the Q4'22 Shareholder Letter, co-CEOs Cannon-Brookes and Farquhar acknowledged "headlines reporting macroeconomic volatility."  Still, the Co-CEO Defendants instructed investors the Company was "uniquely positioned [with] deep-seated momentum and a differentiated business" because: (1) "developers tend to be the last roles companies scale back on"; (2) Atlassian's products are a "relatively small line item in overall IT

budgets and likely not where customers look to reduce costs"; and (3) "customers tell us that Atlassian products are mission critical for them."  The Q4'22 Shareholder Letter then assured investors the Co-CEOs would "continue to scan the horizon for warning signs and be candid with investors as we have throughout our six+ years as a public company," followed by a reference to the Company's core "value" of "Open company, no bullshit."

25.     Moreover, the Q4'22 Shareholder Letter reiterated "our expectations that Cloud revenue growth will be approximately 50% year-over-year for both FY23 and FY24."  In a Company press release, also filed with the above-referenced Form 6-K after the close of markets on August 4, 2022, the Company provided "financial targets" for the first quarter fiscal year 2023, including net income per diluted share "expected to be approximately $0.37 to $0.38 per share.

26.     Notably, the Q4'22 Shareholder Letter further alluded to a "modest decrease in the conversion rates of Free instances upgrading to paid plans," but assured investors that "nothing we are seeing right now has changed our outlook."

27.     During the conference call with analysts accompanying the release of the fiscal fourth quarter 2022 financial results, Wolfe Research analyst Alex Zukin inquired about the "macro impact that you are seeing in the business" and the Company's mention of slower conversion of free customers to paid customers.  In response, Defendant Deatsch stated, "across the many funnels we operate, whether that's our migrations, our editions upgrades, our cross-sell products, our overall retention continues to be exceedingly strong."  CRO Deatsch continued, "what you see is existing customers continue to have demand for what our products to help their teams work more productively" and that the Company would continue "to be vigilant.  We have multiple analytics teams, multiple growth teams, as well as our onboarding and R&D teams that are focused on ensuring that those customers remain active, and that gives us more chances to convert them to paid plans in the future."

28.     During the same call Piper Sandler analyst Quinton Gabrielli asked about the "demand side" and whether "there is one specific place that you're maybe keeping your eye on

more than the others?"  Defendant Deatsch responded, "we are being exceedingly vigilant across watching all stages of our funnel," and that "[t]he good news as of to date is we have yet to see any specific trend geographically or even in industry segments or in customer size that gives us pause to worry to date.  So something we continue to watch like a hawk, but there is no news to share today . . .  We continue to see demand for collaboration products continue to be strong."

29.     On September 14, 2022, Defendant Bharadwaj participated in the Goldman Sachs Communacopia Technology Conference.  During the question-and-answer session, Goldman Sachs analyst Kash Rangan asked Defendant Bharadwaj "what are you seeing out there with the demand environment?"  In response COO Bharadwaj stated, "in the last shareholder letter, we talked about conversion of users from free to paid.  We are seeing a bit of softness over the past couple of months."  However, she reiterated Defendant Farquhar's point from the fiscal fourth quarter 2022 call that "over 90% of our revenue comes from existing customers."  COO Bharadwaj then assured investors "the number of free users that are coming in to create new free instances continues to grow steadily.  We are not seeing any trends there.  So across the board, across existing and new, that's overall what we are seeing different parts of the business."

30.     During the same conference, COO Bharadwaj instructed investors that even beyond the conversion of "free to paid" customers, demand for Atlassian's products remained strong.  "So we think of upsell as really across free to standard, standard to premium, premium to enterprise. And we've seen some very encouraging progress there over the last four quarters, and I haven't really seen any discernible trend there in terms of the macroeconomic impact."  COO Bharadwaj then directed investors' attention to "user expansion, which is unique to the Atlassian model of organic growth."  COO Bharadwaj explained, "That's an area we continue to monitor" because "that's going to be an important one to look at in the current climate."

31.     The above statements identified in ¶¶ 24-30 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made,

not false and misleading.   Specifically, Defendants failed to disclose to investors that: (1) macroeconomic factors were having a material adverse impact on Atlassian's business; (2) the slowing conversions from free to paid customers the Company was experiencing constituted a negative trend; (3) paid user growth also had slowed; and (4) as a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Comes to Light

32.     On November 3, 2022, after the markets closed, Atlassian filed a Current Report on Form 8-K with the SEC that included a shareholder letter for the first fiscal quarter of 2023 ("Q1'23 Shareholder Letter"), ended September 30, 2022.  The Q1'23 Shareholder Letter, which was signed by Defendants Cannon-Brookes and Farquhar, reminded investors of "our 'Open company, no bullshit' value" and started "with the topic that's top of mind for shareholders: macro impacts."  The Q1'23 Shareholder Letter revealed (1) that the "rate of Free instances converting to paid plans . . . trend became more pronounced in Q1" and (2) that "[t]his quarter, we started to see a slowing in the rate of our paid user growth from existing customers."  Notably, whereas three months prior, the Company guided 50% year-over-year growth for Cloud revenue, the Q1'23 Shareholder Letter further revealed a significant reduction to the Company's prior guidance, explaining the Company was "lowering our Cloud revenue growth outlook to a range of approximately 40% to 45% year-over-year for FY23."  In a press release attached as an exhibit to the above-referenced Form 8-K, the Company reported net income per diluted share of $0.36 for the fiscal first quarter of 2023.

33.     During the accompanying conference call that day, Defendant Farquhar acknowledged Atlassian was "not immune to the broader macroeconomic environment."  Defendant Deatsch then explained, "we continue to see th[e] trend today" of free users converting to paying customers "starting to slow down."  CRO Deatsch then revealed that "the new piece we saw in the previous quarter was towards the end of the quarter, we actually saw user expansion in

existing accounts" where "we continue to see growth, just that user growth wasn't nearly as strong as what we've seen historically."

34.     Analysts expressed "surprise" at the disappointing results.  For example, Citibank issued a report on November 3, 2022, decrying the "negative revisions [and] significant and unexpected pivot in demand tone."  Similarly, Wolfe Research reported the same day that Atlassian "delivered unusually disappointing F1Q23 and lowered its expectations for the full year which took us and investors by surprise."  The Wolfe Research analyst opined that the "abrupt change in tone and outlook likely puts shares in the penalty box until more clarity on subscription revenue growth durability can be gained."

35.     On this news, shares of Atlassian dropped $50.34 per share, almost 29 percent, from a closing price of $174.17 per share on November 3, 2022, to a closing price of $123.73 per share on November 4, 2022.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased and/or acquired Atlassian ordinary shares and/or common stock between August 5, 2022 and November 3, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, common stock of Atlassian U.S. and ordinary shares of Atlassian UK actively traded on the NASDAQ (an open and efficient market) under the ticker symbol "TEAM."  Millions of Atlassian shares were

traded publicly during the Class Period on the NASDAQ.  As of November 3, 2022, Atlassian had more than 148 million shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Atlassian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b.    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c.    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Atlassian;

d.    whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Atlassian;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
11

e.        whether the market price of Atlassian ordinary shares and common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.        the extent to which the members of the Class have sustained damages and the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## **UNDISCLOSED ADVERSE INFORMATION**

42.    The market for Atlassian's ordinary shares and common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Atlassian's ordinary shares and common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased and/or acquired Atlassian's ordinary shares and/or common stock relying upon the integrity of the market price of the Company's ordinary shares and common stock and market information relating to Atlassian and have been damaged thereby.

43.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Atlassian's ordinary shares and common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Atlassian's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus

1  causing the Company's ordinary shares and common stock to be overvalued and artificially

2  inflated or maintained at all relevant times.  Defendants' materially false and/or misleading

3  statements during the Class Period directly or proximately caused or were a substantial

4  contributing cause of the damages sustained by Plaintiff and other members of the Class who

5  purchased and/or acquired the Company's ordinary shares and/or common stock at artificially

6  inflated prices and were harmed when the truth was revealed.

7                              **SCIENTER ALLEGATIONS**

8         44.    As alleged herein, Defendants acted with scienter in that Defendants knew or were

9  reckless as to whether the public documents and statements issued or disseminated in the name of

10  the Company during the Class Period were materially false and misleading; knew or were reckless

11  as to whether such statements or documents would be issued or disseminated to the investing

12  public, and knowingly and substantially participated or acquiesced in the issuance or dissemination

13  of such statements or documents as primary violations of the federal securities laws.

14         45.    As set forth herein, the Individual Defendants, by virtue of their receipt of

15  information reflecting the true facts regarding Atlassian, their control over, receipt, and/or

16  modification of Atlassian's allegedly materially misleading statements and omissions, and/or their

17  positions with the Company that made them privy to confidential information concerning Atlassian,

18  participated in the fraudulent scheme alleged herein.

19                  **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

20         46.    The federal statutory safe harbor provided for forward-looking statements under

21  certain circumstances does not apply to any of the allegedly false statements pleaded in this

22  Complaint.  The statements alleged to be false and misleading herein all relate to then-existing

23  facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be

24  characterized as forward-looking, they were not identified as "forward-looking statements" when

25  made, and there were no meaningful cautionary statements identifying important factors that could

26  cause actual results to differ materially from those in the purportedly forward-looking statements.

27

28

47.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Atlassian who knew that the statement was false when made.

## LOSS CAUSATION

48.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

49.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market.  This artificially inflated the prices of Atlassian's ordinary shares and common stock and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Atlassian's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

50.     The market for Atlassian ordinary shares and common stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Atlassian ordinary shares and common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased and/or acquired the Company's ordinary shares and/or common stock relying upon the integrity of the market price of Atlassian ordinary shares and common stock and market information relating to Atlassian and have been damaged thereby.

51.     At all times relevant, the market for Atlassian ordinary shares and common stock was an efficient market for the following reasons, among others:

a. Atlassian was listed and actively traded on NASDAQ, a highly efficient and automated market;

b. As a regulated issuer, Atlassian filed periodic public reports with the SEC and/or the NASDAQ;

c. Atlassian regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d. Atlassian was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52. As a result of the foregoing, the market for Atlassian ordinary shares and common stock promptly digested current information regarding Atlassian from all publicly available sources and reflected such information in Atlassian's stock price. Under these circumstances, all purchasers and acquirers of Atlassian ordinary shares and common stock during the Class Period suffered similar injury through their purchase and/or acquisition of stock at artificially inflated prices, and a presumption of reliance applies.

53. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of

investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Atlassian ordinary shares and common stock; and (iii) cause Plaintiff and other members of the Class to purchase and/or acquire Atlassian ordinary shares and common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers and acquirers of the Company's securities in an effort to maintain artificially high market prices for Atlassian ordinary shares and common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Atlassian's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and

artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Atlassian's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Atlassian and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's ordinary shares and common stock during the Class Period.

58.     Each of the Individual Defendants' primary liability and controlling-person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Atlassian's operating condition, business practices, and

prospects from the investing public and supporting the artificially inflated and/or maintained price of its ordinary shares and common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Atlassian ordinary shares and common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the shares and stock traded or trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased and/or acquired Atlassian ordinary shares and/or common stock during the Class Period at artificially inflated prices and were damaged thereby.

61.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff, the other members of the Class, and the marketplace known of the truth regarding the problems that Atlassian was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or acquired Atlassian ordinary shares and/or common stock, or, if they had purchased or acquired such shares or stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

62.    By virtue of the foregoing, Atlassian and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases and acquisitions of the Company's ordinary shares and/or common stock during the Class Period.

### COUNT II
**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Atlassian within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, Atlassian and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other

1  members of the Class suffered damages in connection with their purchases and acquisitions of the

2  Company's ordinary shares and/or common stock during the Class Period.

3  **PRAYER FOR RELIEF**

4  68.  WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief

5  and judgment as follows:

6  a)  Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the

7  Federal Rules of Civil Procedure on behalf of the Class defined herein;

8  b)  Awarding Plaintiff and the other members of the Class damages in an amount that

9  may be proven at trial, together with interest thereon;

10  c)  Awarding Plaintiff and the members of the Class pre-judgment and post-judgment

11  interest, as well as their reasonable attorneys' and experts' witness fees and other

12  costs; and

13  d)  Awarding such other relief as this Court deems appropriate.

14  **JURY DEMAND**

15  69.  Plaintiff demands a trial by jury.

16

17  Dated: February 3, 2023                    Respectfully submitted,

18

19  _/s/ David R. Kaplan_
   David R. Kaplan

20  **SAXENA WHITE P.A.**

21  David R. Kaplan (SBN 230144)
   505 Lomas Santa Fe Drive

22  Suite 180
   Solana Beach, CA 92075

23  Telephone: (858) 997-0860
   Facsimile: (858) 369-0096

24  dkaplan@saxenawhite.com

25  Maya Saxena

26  Lester R. Hooker (SBN 241590)
   7777 Glades Road

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
20

Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
msaxena@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff City of Hollywood
Firefighters' Pension Fund*

## CERTIFICATION AND AUTHORIZATION

I, Jason Rosner, on behalf of City of Hollywood Firefighters' Pension Fund ("Hollywood Fire"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I am the Chairman of Hollywood Fire. I have reviewed a complaint filed against Atlassian Corporation and its subsidiary Atlassian Corporation Plc (together, "Atlassian") alleging violations of the federal securities laws and authorized its filing. I am authorized in my capacity as Chairman of Hollywood Fire to execute this Certification on behalf of Hollywood Fire.

2.  Hollywood Fire did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.  Hollywood Fire is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Hollywood Fire's transactions in Atlassian's ordinary shares and/or common stock during the Class Period are set forth in the attached Schedule A.

5.  Hollywood Fire has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification: *None*

6.  Hollywood Fire has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff, or the lead plaintiff decision is still pending: *None*

7.  Hollywood Fire will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Fire's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of January, 2023.

*City of Hollywood Firefighters'*
*Pension Fund*

Jason Rosner, Chairman

1

**SCHEDULE A**
**City of Hollywood Firefighters' Pension Fund**
**Transactions in Atlassian Corporation and Atlassian Corporation Plc**

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date | Shares | Price | | Date | Shares | Price |
| 08/05/22 | 20 | $264.80 | | | | |
| 08/05/22 | 419 | $264.92 | | | | |
| 08/08/22 | 170 | $282.46 | | | | |
| 08/08/22 | 155 | $282.93 | | | | |
| 08/08/22 | 21 | $285.39 | | | | |
| 08/08/22 | 2 | $285.60 | | | | |
| 08/09/22 | 113 | $278.86 | | | | |
| 08/09/22 | 180 | $279.65 | | | | |
| 09/30/22 | 1,500 | $216.84 | | | | |
| 09/30/22 | 500 | $218.01 | | | | |