LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: 1.714.540.1235
Email: michele.johnson@lw.com

Colleen C. Smith (SBN 231216)
12670 High Bluff Drive
San Diego, California 92130
Telephone: 1.858.523.5400
Email: colleen.smith@lw.com

Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 1.202.637.2200
Email: susan.engel@lw.com

Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California 94025
Telephone: 1.650.328.4600
Email: daniel.gherardi@lw.com

*Attorneys for Defendants Atlassian Corporation, Atlassian Corporation Plc, Michael Cannon-Brookes, Scott Farquhar, Anu Bharadwaj, and Cameron Deatsch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATLASSIAN CORPORATION, ATLASSIAN CORPORATION PLC, MICHAEL CANNON-BROOKES, SCOTT FARQUHAR, ANU BHARADWAJ, and CAMERON DEATSCH,<br><br>Defendants. | CASE NO. 3:23-cv-00519-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: January 10, 2024<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick, III |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 3

    A. Plaintiffs Fail to Plead Falsity ............................................................................... 3

        1. Mr. Deatsch's August 4, 2022 Statements Were Not False ....................... 3

        2. The Annual Report for Fiscal Year 2022 Was Not False .......................... 6

        3. Ms. Bharadwaj's September 14, 2022 Statements Were Not False ............................................................................................................ 8

        4. The Form S-8 Did Not Pull the Annual Report Forward......................... 10

    B. Plaintiffs Fail to Plead a Strong Inference of Scienter ......................................... 10

        1. Plaintiffs Still Do Not Identify Any Motive to Defraud ........................... 11

        2. Plaintiffs' Laundry List of Insufficient Allegations Does Not Add Up to a Strong Inference of Scienter .......................................... 11

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) .................................................................................. 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................................................................ 14

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .................................................................................................. 8

*Hessong v. Pinterest, Inc.*,
  2021 WL 4339193 (N.D. Cal. Sept. 23, 2021) ..................................................................... 9

*In re Alteryx, Inc. Sec. Litig.*,
  2021 WL 4551201 (C.D. Cal. June 17, 2021) ..................................................................... 15

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ..................................................................... 14

*In re CPI Card Grp. Inc. Sec. Litig.*,
  2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ....................................................................... 4

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
  2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ..................................................................... 10

*In re Facebook, Inc. Sec. Litig.*,
  477 F. Supp. 3d 980, 1027 (N.D. Cal. 2020) ..................................................................... 8, 9

*In re Fibrogen, Inc.*,
  2022 WL 2793032 (N.D. Cal. July 15, 2022) ..................................................................... 14

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) .................................................................. 5, 7

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  200 F. Supp. 3d 987 (N.D. Cal. 2016) ................................................................................ 11

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................................................... 4

*In re QuantumScape Sec. Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022) ............................................................................ 5, 14

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................................................. 12

*In re Zillow Grp., Inc. Sec. Litig.*,
  2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ................................................................. 13

*Ind. Public Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) ................................................................................................. 15

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ........................................................................................... 12

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ..................................................................................... 1, 10, 15

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
  2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ..................................................................... 3

*Okla. Firefighters' Pension and Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018) ................................................................................. 6

*Pardi v. Tricida, Inc.*,
  2022 WL 3018144 (N.D. Cal. July 29, 2022) .................................................................... 14

*Park v. GoPro, Inc.*,
  2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) ..................................................................... 7

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ..................................................................................... 1, 11, 12

*Rubke v. Capitol Bancorp, Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................................................. 5

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) .............................................................................. 5

*Smith v. NetApp, Inc.*,
  2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ..................................................................... 14

*Warshaw v. Xoma Corp.*,
  74 F.3d 955 (9th Cir. 1996) ................................................................................................. 6

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................................................ 9, 14

*Weston Family P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ................................................................................................. 3

*Weston v. DocuSign, Inc.*,
  2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ................................................................ 6, 13

## I. INTRODUCTION

Plaintiffs' Opposition confirms the Amended Complaint should be dismissed because it is based entirely on hindsight allegations.[1] It is not fraud for a company to disclose a slowdown in its business. That is transparency. Nor is it fraud for a company to revise its guidance. That too is transparency. And that is all Defendants did as an uncertain economic environment continued to unfold. At the close of its 2022 fiscal year, Atlassian reported a slowdown in one business metric, Free-to-Paid User Conversions, and then at the close of the next quarter, it reported a new slowdown in a different metric, Existing Paid User Expansion. All the while, Atlassian met its quarterly guidance. Yet, because it anticipated continued slowdowns amidst broader economic uncertainty, Atlassian responsibly revised forward-looking guidance for the remaining three quarters of its fiscal year.

From these disclosures, Plaintiffs argue that the Existing Paid User Expansion slowdown *must have* begun sooner and so Defendants misled investors by not disclosing it earlier. But the Amended Complaint is devoid of even a single particularized fact suggesting any slowdown began before (or was worse than) Defendants said. It is also devoid of any particularized facts suggesting any Defendant intended to deceive investors. Indeed, Plaintiffs' theory of fraud makes no sense. It depends on the notion that Defendants wanted to keep the stock price high for Q1 23 and then deal with the inevitable fallout once they disclosed a slowdown of Atlassian's business just three months later. Plaintiffs do not identify any financial motive for Defendants to do so, and as the Ninth Circuit has held, "the PSLRA neither allows nor requires us to check our disbelief at the door." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020); *see also Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (the "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter"). These fatal pleading failures warrant dismissal.

**No Falsity.** Plaintiffs' argument depends on selectively quoting Defendants' statements and muddling two different metrics: Free-to-Paid Conversions, and Existing Paid User Expansion. Defendants' plain words defeat Plaintiffs' claims.

---

[1] Capitalized terms have the meaning ascribed in the Motion to Dismiss (Dkt. No. 43).

- On August 4, 2022, Defendants disclosed a slowdown in Free-to-Paid Conversions, and noted that while broader macroeconomic forces did not appear to be impacting its other metrics, Atlassian would remain vigilant. No allegations contradict these facts.

- On August 19, 2022, in the middle of the quarter still in progress, Atlassian's Annual Report for the prior fiscal year discussed its financial performance and metrics for the fiscal year ended June 30, 2022, and again warned that the macroeconomic environment could affect Atlassian in the future. Plaintiffs argue the report was false because Atlassian later admitted that it began to see a slowdown in Existing Paid User Expansion in the second half of Q1 23. But that fact does not contradict anything in the Annual Report about financial performance for an entirely different period. It also does not contradict anything Atlassian said just four days into the second half of Q1 23.

- On September 14, 2022, Ms. Bharadwaj described three *distinct* aspects of Atlassian's business: (1) Free-to-Paid Conversions, (2) Subscription Upgrades, and (3) Existing Paid User Expansion. Plaintiffs argue her statements were false because by this point in time, Atlassian had begun to see a slowdown in Existing Paid User Expansion. But Ms. Bharadwaj did not say Existing Paid User Expansion was still going strong, or that it was unaffected by market conditions. Instead, she simply noted **Atlassian would continue to monitor Existing Paid User Expansion**, and that it would be important to look at this metric in the macroeconomic environment. Plaintiffs allege no facts suggesting these statements were false.

- On October 4, 2022, Atlassian filed a required Form S-8 to register shares for its employee equity plan that incorporated by reference the Annual Report for the period ended June 30, 2022. This routine filing did not update all of Atlassian's financials as of the timing of filing, and did not say anything about financial performance as of October 4, 2022. Again, Plaintiffs allege no fact suggesting anything in the Annual Report, or the Form S-8 was false when made.

Atlassian provided comprehensive updates on its financial performance each quarter, as is customary and required. And when the macroeconomic environment began to impact Atlassian's business, despite *meeting its quarterly financial guidance*, Atlassian promptly revised its forward-looking guidance at the next scheduled opportunity to provide investors with as much clarity as possible. The challenged statements were not false or misleading, and the Amended Complaint should be dismissed on this basis alone.

**No Scienter.** Plaintiffs' fraud claim makes no sense, and their laundry list of boilerplate allegations fails to cover up that flaw. Plaintiffs' theory is that Defendants withheld information about a business slowdown until Atlassian's next quarterly financial results announcement in November 2022. But Plaintiffs do not offer any theory why Defendants would do so. For

example, they do not allege any facts suggesting any Defendant sought to capitalize on supposed inside information, nor state any other basis to believe Defendants would have had any reason to conceal information for one quarter.  Their theory that Defendants kept information quiet for no reason is implausible and does not support the requisite strong inference of scienter.  Indeed, the far more compelling inference is that Defendants had *not* identified any slowdown beyond what they disclosed, and they were continuing to monitor business metrics in a turbulent economic environment.  Defendants then updated investors the very next quarter, as soon as they identified headwinds that cautioned a change in future guidance.  Doing so is the opposite of fraud.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Plead Falsity

Plaintiffs fail to allege any particularized fact establishing that any challenged statement was false or misleading when made, or was contradicted by contemporaneous facts.  *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) (dismissing securities claims where "allegations omit contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality"); *see also Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) ("[f]or a statement to be false or misleading, it must 'directly contradict what the defendant knew at the time' or 'omit material information'").

#### 1.   Mr. Deatsch's August 4, 2022 Statements Were Not False

Plaintiffs challenge Mr. Deatsch's statements disclosing a slowdown in Free-to-Paid Conversions and noting that as of August 4, 2022, Atlassian had not yet seen impacts that gave it pause. Opp. at 11-16.  Plaintiffs' argument rests on the faulty premise that Defendants "admitted" on November 3, 2022, that Atlassian "had seen 'two trends'" in both Free-to-Paid Conversions and Existing Paid User Expansion as of July 2022. *Id*. at 11.  That is wrong.

<u>Free-to-Paid Conversions</u>.  Plaintiffs argue Mr. Deatsch's statements about the Free-to-Paid Conversions slowdown were false because, while he disclosed a softness in the metric, he did not expressly label this phenomenon a "trend." *Id*. at 12-13.  This argument is not supported in law or logic. Mot. at 10-13.  Plaintiffs do not cite a single case—because there are none—

holding that a company must assign the word "trend" to any disclosure it makes to investors about a slowdown in its business. Nor do Plaintiffs point to a single fact suggesting the impact on Free-to-Paid Conversions was greater at the time than the "modest decrease" Mr. Deatsch described. To the contrary, the alleged and incorporated facts confirm Free-to-Paid Conversions did not have any so-called "material effects" (Opp. at 12) even in Q1 23 because Atlassian met or exceeded its financial guidance for that quarter. Mot. at 7, 9. Defendants' description in November 2022 of seeing a "more pronounced" slowdown in Free-to-Paid Conversions during Q1 23 does not suggest otherwise.

Existing Paid User Expansion. Plaintiffs' theory that Atlassian omitted a material adverse trend in Existing Paid User Expansion on August 4, 2022, fares even worse. Opp. at 11-14. Mr. Deatsch stated that as of that date, Atlassian had "yet to see any specific trend … that gives us pause or worry to date," and noted Atlassian would "continue to be vigilant" given the macroeconomic environment. Mot. at 10. Plaintiffs argue these statements were misleading because Defendants disclosed in November 2022 that Existing Paid User Expansion had begun to slow and they described it as a "trend." Opp. at 11-12. In Plaintiffs' view, this somehow admits that Existing Paid User Expansion was already a specific trend having material adverse effects three months earlier. *Id.* Plaintiffs entirely ignore that Defendants *also* said in November that the slowdown *began* halfway through Q1 23—weeks after the August 4, 2022 challenged statements. Ex. G at 12. And Plaintiffs fail to offer a single particularized fact—other than their flawed speculation from the November 2022 disclosure—suggesting that Existing Paid User Expansion had slowed *at all* by August 4, 2022, let alone that a "specific trend" existed on August 4, 2022, that was having purportedly "material adverse effects" by that time. Mot. at 18.[2]

---

[2] Plaintiffs have no meaningful response to the cases rejecting periods longer than the single quarter here as insufficient to establish a material adverse trend. Mot. at 18. Instead, they argue this case is different because Atlassian affirmatively denied any trend, but unlike their cited cases, Plaintiffs have not alleged the existence of any "trend" as of the August 4, 2022, that might render the challenged statements false. Opp. at 20-21 & n.9 (citing *In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017) (denying dismissal of non-fraud claim based on trend seen over half a year) and *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1137 (9th Cir. 2017) (reversing dismissal where defendants denied material trend and later admitted material trend spanning nearly yearlong period of previous denials)).

1    Plaintiffs point to snippets of an exchange with an analyst to suggest Defendants said the
slowdown began sooner.  Opp. at 13.  But again, Plaintiffs ignore that the analyst also said
exactly what Defendants said in November—that the Existing Paid User Expansion slowdown
only "began midway through the quarter."  Ex. G at 11.  Nowhere did Mr. Deatsch suggest
otherwise.  *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 (N.D. Cal. Mar. 29, 2019)
(dismissing on falsity grounds where "relevant context" including "the words and sentences
surrounding the challenged phrases" undermined allegations).[3]

Plaintiffs also insist that Atlassian's historically linear sales cycle (as alleged in part by
their CWs) suggests there were "material adverse trends in July and August."  Opp. at 14-15.[4]
But Plaintiffs do not explain how historic linearity says anything about Q1 23—nor could it,
given Defendants' disclosure in November 2022 that Q1 23 was *not* linear because Existing Paid
User Expansion had begun to slow down mid-quarter.

Ultimately, Plaintiffs' allegations rest entirely on what Defendants were seeing in
November 2022 (*three months after* the August 2022 statements).  That falls far short of the
particularized facts required to plead any statement was false when made.  *See Rubke v. Capitol
Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (requiring "contemporaneous statements or
information" "inconsistent" with challenged statements rendering them false when made).

<u>Non-Actionable Statements</u>.  The August 4, 2022 statements are non-actionable
optimism.  Mot. at 12-13.  Plaintiffs offer two responses.  First, they argue the challenged
statements were "repeated" by analysts (Opp. at 15), but analysts' reporting on Mr. Deatsch's

---

[3] Plaintiffs cite inapposite cases (Opp. at 14) to try to create a non-existent question of fact.  In *In re QuantumScape Securities Class Action Litigation*, defendant stated testing results were uncompromised, while allegedly relying on compromised testing conditions, and expert analysis was needed to determine the truth.  580 F. Supp. 3d 714, 734, 741 (N.D. Cal. 2022).  Not so here. Plaintiffs allege no question of fact suggesting impacts to Free-to-Paid Conversions did not grow more pronounced in Q1 23, or that impacts to Existing Paid User Expansion did not begin in the second half of that quarter.  *See also Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1126, 1139-41 (N.D. Cal. 2017) (statements of increased user trends were allegedly misleading when company tied "$500 million in revenue growth" to a 3% increase in its daily to monthly active user ratio, while concealing and later admitting same metric was flat or declining).

[4] The CWs' vague allegations of linearity and Atlassian's data monitoring systems are untethered to falsity or scienter for any challenged statement.  Plaintiffs make no effort to allege either CW ever spoke to or even met any Individual Defendant, much less that the CWs' generic statements would undermine any challenged statement.  Mot. at 12.

statements does not have any bearing on the statements being non-actionable optimism. *See Okla. Firefighters' Pension and Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 570 (S.D.N.Y. 2018) (an analyst "report that merely recaps corporate puffery does not convert that puffery into a material misstatement"). Second, Plaintiffs argue the challenged statements cannot be non-actionable because they concern aspects of the business the "speaker knows to be performing poorly." Opp. at 15-16. But, unlike their cited cases, Plaintiffs allege nothing suggesting Mr. Deatsch knew any fact contradicting his statements at the time they were made (and it is hard to see how they could, given that Atlassian performed for the quarter exactly as it told investors it would, meeting its guidance). *See id.* (citing *Weston v. DocuSign, Inc.*, 2023 WL 3000583, at *18 (N.D. Cal. Apr. 18, 2023) (statements about usage actionable where plaintiffs adequately alleged speaker knew of declining usage at time of statement), and *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957, 959 (9th Cir. 1996) (statements about drug's safety and approval may be actionable where contemporaneous report showed drug actually increased mortality)). Instead, the August 4, 2022 statements are optimistic expressions about no observed "significant shift" in "strong" demand, a "slight" slowdown in Free-to-Paid Conversions, and a commitment to watching the macroeconomic environment "like a hawk" (¶¶ 89, 92), each of which is exactly the type of generic statement courts routinely deem not actionable.

### 2. The Annual Report for Fiscal Year 2022 Was Not False

Plaintiffs' challenge to a single statement in the Annual Report regarding material trends *for fiscal year 2022* (Opp. at 16-18; Ex. A at 66) fails for similar reasons. Plaintiffs assert this statement was false because: (1) Defendants supposedly admitted they knew of material adverse trends as of August 19, 2022, when they indicated they started seeing macroeconomic impacts on Existing Paid User Expansion in the second half of the quarter ended September 30, 2022; and (2) the fiscal year 2022 Annual Report's reference to the "current fiscal year" was supposedly about 2023, the next fiscal year. Opp. at 16-18. Both of these assertions are wrong.

*First*, Plaintiffs argue that because Defendants later disclosed in November 2022 that they *began* to see macroeconomic impacts to Existing Paid User Expansion in the second half of Q1 23, they must have known of a material trend by mid-August 2022, halfway through the

quarter in progress. *Id.* at 16. But Plaintiffs' argument fails for the same reasons as above—and also because it would mean Defendants knew of a material adverse trend *four days* into the second half of the quarter—August 15, 2022 (halfway point of Q1 23) to August 19, 2022 (date of Annual Report). Plaintiffs offer no support for the argument that four days constitutes a trend of any sort—it does not. *See* Mot. at 18.

Plaintiffs also disregard the fact that Atlassian warned that macroeconomic headwinds could impact Atlassian's business in the future, including "revenue exposure to customers . . . and industries that may be disproportionately impacted by weakening economic conditions." Ex. A at 66; Mot. at 14-16.; *Park v. GoPro, Inc.*, 2019 WL 1231175, at *16-17 (N.D. Cal. Mar. 15, 2019) (dismissing challenge to disclosure of risk of impact from macroeconomic environment where plaintiff failed to adequately allege risk had already materialized). Plaintiffs argue that risk had "already materialized" (Opp. at 17), and therefore Defendants' cited cases are distinguishable (*id.* at 18 n.7), but Plaintiffs do not allege any facts indicating that a known material adverse trend existed impacting Existing Paid User Expansion as of August 19, 2022.

*Second*, Plaintiffs' argument that "current fiscal year" in an annual report for FY 2022 must mean FY 2023 makes no sense and is unsupported. The challenged statement states "[w]eakening economic conditions" and other factors did not "have a material adverse impact on our financial condition or results of operations during the fiscal year ended June 30, 2022," while warning such factors could affect Atlassian's business moving forward. Ex. A at 65-66. The line Plaintiffs challenge refers to the lack of known material adverse trends in the current fiscal year that "*caused* the disclosed financial information to be not necessarily indicative of future results." *Id.* at 66. Plaintiffs do not explain why, let alone how, an annual report for a just-completed fiscal year could make misrepresentations about the next fiscal year that was just six weeks old. *See Intel*, 2019 WL 1427660, at *11.[5]

---

[5] Plaintiffs' citation to the Annual Report's disclosure that Mr. Farquhar "currently serves" as interim-CFO as of July 1, 2022, offers no help to their argument. Opp. at 17. That disclosure involved an appointment to interim-CFO that was announced before the end of the fiscal year and became effective on the first day of the next fiscal year, and the disclosure specifies that it refers to a date outside of the fiscal year covered by the Annual Report. There is no such similarity with the challenged statement that is within a section expressly dedicated to "Trend Information" known in the year ended June 30, 2022. Ex. A at 65-66.

### 3. Ms. Bharadwaj's September 14, 2022 Statements Were Not False

Plaintiffs' only falsity argument for Ms. Bharadwaj's statements is that they were allegedly "inconsistent with internal known information" because Defendants' "entire position" is that "trends were discovered in August." Opp. at 18. But Plaintiffs again conflate Atlassian's different business metrics in arguing that Ms. Bharadwaj told investors "there were no material adverse trends to report across the board." *Id.* That is simply not what she said.

Free-to-Paid Conversions: Ms. Bharadwaj first addressed Free-to-Paid Conversions:

> "Just in the last shareholder letter, **we talked about conversion of users from free to paid. We are seeing a bit of softness over the past couple of months.** But it's important to illustrate the point in the overall picture as over 90% of our revenue comes from existing customers. So the conversion from free to paid is really a very small part of our business. And also, **the number of free users that are coming in that create new free instances continues to grow steadily**. We're not seeing any trends **there**. So across the board, across existing and new, that's overall what we're seeing in different parts of the business." ¶ 97 (emphasis added); Ex. D at 9.

That is, Ms. Bharadwaj reiterated the previously disclosed "softness" in *existing* free users converting to paid status, *i.e.*, Free-to-Paid Conversions. *Id.* And she reported that the number of *new* free users "continues to grow steadily," and that Atlassian was "not seeing any trends *there*." Ex. D at 9 (emphasis added). Plaintiffs cannot manufacture a securities fraud claim by misrepresenting what Ms. Bharadwaj actually said. Mot. at 16-18; *see Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (plaintiff alleging deceit "may not misquote or misleadingly excerpt" challenged statement "and expect his action to survive a motion to dismiss"); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1027 (N.D. Cal. 2020), *reversed on other grounds, In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844 (9th Cir. 2023).

Subscription Upgrades. Ms. Bharadwaj then responded to an analyst question asking about Atlassian's business model and sales and marketing strategy by discussing, in part, "upsell" across Atlassian's subscription tiers when users upgrade to add services and features ("Subscription Upgrades"). Mot. at 17. She stated:

> So to address your question, the way our pricing model works is the first 10 users are free, and then the 11th user onwards, it's paid . . . So we think of **upsell** as really across free to standard, standard to premium, premium to enterprise. And we've seen some very encouraging progress there over the last four quarters. And I

> haven't really seen any discernible trend **there** in terms of the macroeconomic impact." ¶ 98 (emphasis added); Ex. D at 9.

Again, when Ms. Bharadwaj stated she had not seen any discernible trend, she clarified it with "there," meaning across user Subscription Upgrades. *Id.* Plaintiffs identify no support for their theory that "there" meant some not-yet-discussed aspect of Atlassian's business.

<u>Existing Paid User Expansion</u>. Finally, Ms. Bharadwaj declined to describe any trends in "user expansion," instead noting that this metric would be important to watch:

> "And **user expansion** . . . That's an area that we **continue to monitor**. That's not an area where we try to do a lot of product interventions. **But that's going to be an important one to look at in the current climate**." ¶ 98 (emphasis added); Ex. D at 9.

Ms. Bharadwaj did not speak one way or another about trends in Existing Paid User Expansion, nor what Atlassian was seeing in that metric. Instead, she told investors it was one Atlassian "continue[d] to monitor" and would be an "important one to look at in the current climate." *Id.* Plaintiffs cannot move Ms. Bharadwaj's statements out of order to try to fit their erroneous narrative. *See Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *10 (N.D. Cal. Dec. 18, 2017) (dismissing claims where "[r]ather than plead specific facts that render Defendants' representations false or misleading, Plaintiff takes pieces of Defendants' 'admissions' out of context, and urges the Court to adopt an implausible inference of falsity"); *Hessong v. Pinterest, Inc.*, 2021 WL 4339193, at *6 (N.D. Cal. Sept. 23, 2021) (rejecting falsity allegations where challenged statement "does not refer" to what plaintiffs claim).[6]

Finally, Plaintiffs try to avoid well-settled law holding companies "do not have an obligation to offer an instantaneous update of every internal development" (Mot. at 17), by repeating the unsupported conclusion that Defendants knew facts contradicting their challenged

---

[6] Plaintiffs attempt to distinguish *Facebook*, but in doing so, they highlight the deficiencies in their allegations. Opp. at 20 n.8. Plaintiffs argue *Facebook* is different because there the defendant promised to "continue to monitor" a business metric, but did not include "any qualitative comment" about that metric. *Id.* (quoting *Facebook*, 477 F. Supp. 3d at 1027). But that is precisely the case here. Ms. Bharadwaj made no qualitative (or quantitative) comment about Existing Paid User Expansion, and instead promised to monitor it and warned investors to keep an eye on it given the macroeconomic environment. Ex. D at 9.

statements at the time they were made.  Opp. at 20.[7]  But Plaintiffs have not alleged any information known to Ms. Bharadwaj that contradicts anything she said on September 14, 2022.

### 4. The Form S-8 Did Not Pull the Annual Report Forward

Plaintiffs' only challenge to the Form S-8 filed in connection with Atlassian's employee equity plan is a repeat of their challenge to the Annual Report, which SEC rules required to be incorporated by reference.  Opp. at 21.  But the Annual Report speaks to financial conditions *only* in the fiscal year it covers, here the year ended June 30, 2022.  Mot. at 18-19.  Incorporating it by reference in a later document does not refresh its contents as of the date of incorporation; rather, the Annual Report speaks only of FY 2022, *unless and only to the extent* a later document purports to modify it.  Ex. H at 4 (incorporated documents are modified only if a subsequent document specifically "modifies or supersedes such earlier statement").  Plaintiffs' argument that without modifying the Annual Report or an "explicit disclaimer" that the Annual Report was not being modified, its entire contents were refreshed at the time it was incorporated by reference (Opp. at 21 & n.10) gets this rule exactly backwards.  It should be rejected.

### B. Plaintiffs Fail to Plead a Strong Inference of Scienter

Even if Plaintiffs adequately alleged falsity (they have not), they come nowhere close to alleging a strong inference that Defendants intended to defraud investors.  Mot. at 8, 19-25.  Plaintiffs have no answer for the far more compelling non-fraudulent inference, or for the implausibility of their theory that Defendants concealed adverse impacts on the business for a few months without any financial motive to do so.  *Nguyen*, 962 F.3d at 415 (rejecting scienter theory based on alleged omission where defendants had not "sought to profit from th[e] scheme in the interim").  Nothing in the Opposition suggests any Defendant had any motive to commit fraud or made any challenged statement knowingly or with reckless disregard for the truth.  *See In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (granting dismissal where independently insufficient scienter allegations were insufficient when considered collectively, *i.e.*, "zero plus zero (plus zero plus zero plus zero) cannot equal one").

---

[7] Plaintiffs' citation to *Quality Systems* (Opp. at 20) is inapposite because the court did not refer to the challenged statement as an "intra-quarter" update, and indeed, considered statements made over nearly a year.  865 F.3d at 1136-38.

### 1. Plaintiffs Still Do Not Identify Any Motive to Defraud

Plaintiffs have no response to their lack of motive allegations other than to assert that motive is not required. Opp. at 25. But a lack of motive allegations makes it "much less likely" Plaintiffs can meet the high bar required to plead scienter. *Prodanova*, 993 F.3d at 1108; *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) (the "absence of a motive allegation . . . significantly undermine[s] a plaintiff's theory of fraud"). And while Plaintiffs point to stock sales of exactly the same number of shares every day by Messrs. Cannon-Brookes and Farquhar, made pursuant to non-discretionary trading plans entered into long before the class period, they all but admit this allegation cannot support scienter because it is well settled that stock sales pursuant to pre-established Rule 10b5-1 trading plans do not support an inference of scienter. Mot. at 20. Plaintiffs' position would mean Messrs. Cannon-Brookes and Farquhar entered into trading plans (identical to plans they have entered since Atlassian's initial public offering) to sell the same number of shares every trading day knowing that *months later* macroeconomic headwinds would begin to impact the business. That hindsight pleading does not meet Plaintiffs' heightened burdens. *See In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. 2016) (rejecting "fraud by hindsight").

### 2. Plaintiffs' Laundry List of Insufficient Allegations Does Not Add Up to a Strong Inference of Scienter

The Opposition includes various "facts" purportedly demonstrating scienter. Opp. at 22-25. But Plaintiffs' theory does not make sense: it assumes Defendants lied to investors about Atlassian's experience in the macroeconomic environment knowing they would have to reverse their public statements the very next quarter. That implausible theory is far less compelling than the non-fraudulent inference and does not plead scienter.

*First*, Plaintiffs argue Defendants "**admitted** that they knew of negative trends since ***July 2022***." Opp. at 22. But just as this (incorrect) refrain does not establish falsity, it likewise does not support scienter. Defendants correctly and plainly told investors early in Q1 23 that they were seeing a slowdown in Free-to-Paid Conversions. Ex. B. at 9 (August 2022: "one thing that's worth calling out that we've seen literally just in the last month is [new free users] are

converting to those paid plans at a slight[ly] slower rate than what we've seen in previous quarters"); *see also* Ex. C at 14.  They then reiterated that fact in the earnings call on November 3, 2022, when Mr. Deatsch said "free customers converting to paid [i.e., Free-to-Paid Conversions] was slowing down going into August."  Ex. G at 12.  Atlassian reported at the same time that it had begun to see "the growth of paid users from existing customers [i.e., Existing Paid User Expansion] slow **in the second half of Q1**."  Ex. F at 11 (emphasis added).  This is exactly the periodic reporting the securities laws call for, not an "admission" of fraud.

*Second*, Plaintiffs vaguely allege Defendants had visibility into and would be vigilant in monitoring Atlassian's business and operations.  Opp. at 22-23.  But Plaintiffs do not allege that any Defendant was aware of any specific information contradicting what any of them said at the time of their statements.  Mot. at 23; *Prodanova*, 993 F.3d at 1109 (requiring facts that defendants had "detailed and contemporaneous knowledge" of information contradicting challenged statements).  And Plaintiffs side-step their obligation to plead scienter with particularity for each Defendant by arguing only that it is "absurd" Ms. Bharadwaj would not monitor "'the same information' as other management."  Opp. at 23 n.12.  But that argument does not allege with particularity what Ms. Bharadwaj knew at the time that would have contradicted her challenged statement.  *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035-36 (9th Cir. 2002) (rejecting scienter based on conclusory statements about management's access to supposed "negative internal reports" without particularized allegations of specific information contradicting defendants' public statements); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1175 (C.D. Cal. 2007) (access to unspecified information "even combined with allegations of a hands-on management style, is not enough to show deliberate recklessness").

Plaintiffs' cited authority (Opp. at 22-23) is irrelevant because they have not alleged particularized facts establishing that any Defendant knew facts contradicting any challenged statement at the time it was made—or even that such facts existed.  Even accepting that Defendants were monitoring the macroeconomic environment and Atlassian's business, no facts establish that any Defendant knew about a *continuing trend* of slowing Existing Paid User Expansion that did not even begin until the second half of Q1 23.  These allegations are a far cry

from the "multiple statements from confidential witnesses" during the class period about drastically declining sales to which management told investors it had real-time access that supported scienter in *DocuSign*. Opp. at 23 (citing *DocuSign*, 2023 3000583, at *20). Monitoring information is insufficient to plead scienter; instead, Plaintiffs must allege facts showing the monitored information actually contradicted the challenged statements when made. *See In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *19-20 (W.D. Wash. Apr. 19, 2019) (Opp. at 23) (scienter allegations sufficient where executives monitored metrics that specifically showed program's non-compliance while publicly touting program's legal compliance).

*Third*, Plaintiffs' reference to historical linearity in sales does not support any theory that Defendants intended to deceive investors. Opp. at 23-24. Plaintiffs make no effort to explain how intra-quarter activity—which Atlassian warned could vary between quarters based on many factors including the macroeconomic environment (Mot. at 2-5, 12)—equates to knowledge of information undermining any challenged statement. Again, Defendants disclosed in November 2022 that Atlassian met its revenue and operating margin guidance in Q1 23. Defendants also disclosed lowered forward-looking guidance based, in part, on a continuing slowdown in Existing Paid User Expansion that did not exist until the *second half* of Q1 23. If anything, that revision of guidance undermines scienter: Defendants disclosed macroeconomic impacts in the first earnings announcement after their onset. That is the opposite of fraud.

*Fourth*, Plaintiffs argue that answers to analyst questions about macroeconomic impacts support scienter because "Defendants knew (and would later admit)" that the opposite of the answers were true. Opp. at 24. But again, Plaintiffs have no support for their assertion that Defendants knew of impacts to any business metric that undermined any answer to analyst questions at the time it was made. Mot. at 24. Indeed, even the analyst question to which Plaintiffs refer (Opp. at 13) noted, in a portion conveniently omitted from the Opposition, that the Existing Paid User Expansion slowdown only began "midway through the quarter." Ex. G at 11. Plaintiffs' cases are inapposite. In *In re Fibrogen, Inc.*, management responded to analyst questions by implying that clinical trial data was "sanctioned by the FDA," despite specific allegations that management manipulated the trial data and concealed adverse findings from the

FDA. 2022 WL 2793032, at *23-24 (N.D. Cal. July 15, 2022) (Opp. at 24); *see also QuantumScape*, 580 F. Supp. 3d at 741 (scienter pleaded where management said they used "uncompromised testing conditions," but plaintiffs alleged particularized facts that management used "compromised testing conditions").

*Fifth*, Plaintiffs allege analysts' reporting on business metrics somehow supports scienter. Opp. at 24. But Plaintiffs do not explain how analyst interest in and reaction to new information relates to what Defendants knew at the time of any challenged statement. *See In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *10 n.5 (N.D. Cal. Mar. 29, 2013) (rejecting argument that "analyst reactions" supported scienter); Mot. at 24. Again, Plaintiffs' cited case shows what is missing from their allegations. Opp. at 24 (citing *Fibrogen*, 2022 WL 2793032, at *22 (analyst reports did "not establish scienter by themselves" even where analysts noted the purported corrective disclosure was the "worst case of data manipulation in years")).

*Sixth*, Plaintiffs return to "core operations," asserting that because Existing Paid User Expansion was 90% of Atlassian's revenue, Defendants must have been aware of "issues" relating to that metric. Opp. at 24. But again, Plaintiffs do not allege when anyone at Atlassian understood the Existing Paid User Expansion slowdown (which did not begin until the second half of Q1 23) to be a material trend or even an "issue." Plaintiffs do not allege the "rare circumstance" where core operations is sufficient to allege scienter. *Welgus*, 2017 WL 6466264, at *19 (rejecting core-operations theory where defendant derived 83% of revenue from one product); Mot. at 24. Allegations "merely emphasizing the importance" of a business metric to the company do "not show that the core operations theory applies." *See Pardi v. Tricida, Inc.*, 2022 WL 3018144, at *15 (N.D. Cal. July 29, 2022) (citing cases).

*Seventh*, Plaintiffs argue the short time between the challenged statements and their purported correction supports scienter. Opp. at 24-25. But Plaintiffs cannot manufacture a fraud claim just by alleging a short class period. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (rejecting scienter allegations based on timing between misstatements and corrections); *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *6 (N.D. Cal. Feb. 1, 2021) (time between misstatements and correction insufficient

1  for scienter, including because complaint cited intervening events due to macroeconomic
2  concerns). Indeed, the opposite is true: the single-quarter class period negates an inference of
3  fraudulent intent, and instead supports the fact that Atlassian warned investors it was not immune
4  to macroeconomic pressures, and updated investors as soon as those pressures intervened and
5  began to have an impact. *See Nguyen*, 962 F.3d at 415 (rejecting scienter theory that "depends
6  on the supposition that defendants would rather keep the stock price high for a time and then face
7  the inevitable fallout" when the market learned of what defendants purportedly knew).
8      *Eighth*, Plaintiffs concede Item 303 cannot independently state a Section 10(b) claim.
9  Opp. at 25. They nonetheless argue omitting "trends" in violation of Item 303 supports scienter.
10 *Id.* That cannot be squared. Mot. at 24-25. Plaintiffs rely on an out-of-circuit case relating Item
11 303 to scienter where defendants had actual knowledge of a material uncertainty based on an
12 internal investigation that showed a fraudulent scheme. Opp. at 25 (citing *Ind. Public Ret. Sys. v.*
13 *SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016)). But Plaintiffs do not allege an Item 303 violation
14 here, and even if they had, they do not allege any fact demonstrating any Defendant's knowledge
15 of a material adverse trend at the time of any challenged statement (as *SAIC* required).
16     Plaintiffs' scienter theories are nowhere near as compelling as the inference that despite
17 not seeing a material adverse trend from macroeconomic headwinds at the time of the challenged
18 statements, Defendants warned investors that Atlassian was not immune to impacts from an
19 uncertain economic environment. And, as soon as those impacts began, Atlassian disclosed them
20 and reset investor expectations for the future. *In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201,
21 at *10 (C.D. Cal. June 17, 2021) (plaintiff failed to plead scienter where "more plausible
22 alternative explanation for the events detailed in the [complaint]" is that defendants' decision to
23 "pull [forward-looking] fiscal year guidance" in the midst of uncertain economic circumstances
24 "is more indicative of a business responding to uncertainty").

### III.  CONCLUSION

26     Defendants respectfully request that the Court grant Defendants' Motion to Dismiss.

| | |
|---|---|
| Dated:  November 22, 2023 | Respectfully submitted, |
| | LATHAM & WATKINS LLP |
| | By /s/ *Michele D. Johnson* |
| | Michele D. Johnson (SBN 198298) |
| | 650 Town Center Drive, 20th Floor |
| | Costa Mesa, California 92626 |
| | Telephone:  1.714.540.1235 |
| | Email:  michele.johnson@lw.com |
| | |
| | Colleen C. Smith (SBN 231216) |
| | 12670 High Bluff Drive |
| | San Diego, California 92130 |
| | Telephone:  1.858.523.5400 |
| | Email:  colleen.smith@lw.com |
| | |
| | Susan E. Engel (*pro hac vice*) |
| | 555 Eleventh Street, NW, Suite 1000 |
| | Washington, D.C. 20004 |
| | Telephone:  1.202.637.2200 |
| | Email:  susan.engel@lw.com |
| | |
| | Daniel R. Gherardi (SBN 317771) |
| | 140 Scott Drive |
| | Menlo Park, California 94025 |
| | Telephone:  1.650.328.4600 |
| | Email:  daniel.gherardi@lw.com |
| | |
| | *Attorneys for Defendants* |