1  LATHAM & WATKINS LLP
   Michele D. Johnson (SBN 198298)
2  650 Town Center Drive, 20th Floor
   Costa Mesa, California 92626
3  Telephone: 1.714.540.1235
   Email: michele.johnson@lw.com
4
   Colleen C. Smith (SBN 231216)
5  12670 High Bluff Drive
   San Diego, California 92130
6  Telephone: 1.858.523.5400
   Email: colleen.smith@lw.com
7
   Susan E. Engel (*pro hac vice*)
8  555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004
9  Telephone: 1.202.637.2200
   Email: susan.engel@lw.com
10
   Daniel R. Gherardi (SBN 317771)
11 140 Scott Drive
   Menlo Park, California 94025
12 Telephone: 1.650.328.4600
   Email: daniel.gherardi@lw.com
13
   *Attorneys for Defendants Atlassian Corporation,*
14 *Atlassian Corporation Plc, Michael Cannon-*
   *Brookes, Scott Farquhar, Anu Bharadwaj, and*
15 *Cameron Deatsch*

16                    **UNITED STATES DISTRICT COURT**

17                    **NORTHERN DISTRICT OF CALIFORNIA**

18                         **SAN FRANCISCO DIVISION**

19
   CITY OF HOLLYWOOD FIREFIGHTERS'      CASE NO.  3:23-cv-00519-WHO
20 PENSION FUND, Individually and on Behalf
   of All Others Similarly Situated,      **DEFENDANTS' NOTICE OF MOTION**
21                                        **AND MOTION TO DISMISS SECOND**
                        Plaintiff,        **AMENDED CLASS ACTION COMPLAINT**
22                                        **FOR VIOLATIONS OF THE FEDERAL**
                                          **SECURITIES LAWS; MEMORANDUM OF**
23        vs.                             **POINTS AND AUTHORITIES**

24 ATLASSIAN CORPORATION,
   ATLASSIAN CORPORATION PLC,             Date:      August 7, 2024
25 MICHAEL CANNON-BROOKES, SCOTT          Time:      2:00 p.m.
   FARQUHAR, ANU BHARADWAJ, and           Courtroom: 2, 17th Floor
26 CAMERON DEATSCH,                       Judge:     Hon. William H. Orrick, III

27                        Defendants.

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 7, 2024, at 2:00 p.m., or as soon thereafter as the Court's schedule allows, in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Seventeenth Floor, San Francisco, California 94102, Defendants Atlassian Corporation and Atlassian Corporation Plc, Michael Cannon-Brookes, Scott Farquhar, Anu Bharadwaj, and Cameron Deatsch (collectively, "Defendants") will and hereby do move to dismiss the Second Amended Class Action Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiffs City of Hollywood Firefighters' Pension Fund and Oklahoma Firefighters Pension and Retirement System.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq*., on the grounds that Plaintiffs fail to state a claim on which relief can be granted.

Defendants' Motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, the Request for Judicial Notice and Incorporation by Reference and Declaration of Colleen C. Smith filed concurrently herewith, all files and records in this action, and anything else as may be considered by the Court. Through this Motion, Defendants seek an order dismissing the Second Amended Complaint with prejudice for failure to state a claim.

## <u>ISSUES TO BE DECIDED</u>

Whether the Second Amended Complaint fails to state a claim under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

Dated:  April 19, 2024                           Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Michele D. Johnson*
    Michele D. Johnson

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

    A.  Atlassian Achieves Growth by Providing Free Productivity-Enhancing Software and Then Expanding Its Customer Relationships ................................................................................... 2

    B.  Atlassian Provides Q4 and FY 2022 Results and Q1 and FY 2023 Guidance, While Warning That Growth Could Be Impacted by Evolving Market Conditions ............................................... 3

    C.  Atlassian Redomiciles From the United Kingdom to the United States ......................................................................................... 4

    D.  Atlassian Announces Q1 23 Financial Results That Met Guidance, but Revises Forward-Looking Guidance for the Remainder of FY 2023 ............................................................................... 5

    E.  The Court Dismisses Plaintiffs' Amended Complaint ......................... 5

    F.  Plaintiffs Amend Again Without Curing the Amended Complaint's Flaws ...................................................................... 6

III.  LEGAL STANDARD ........................................................................................... 7

IV.  ARGUMENT ........................................................................................................ 8

    A.  Plaintiffs Still Fail to Plead Falsity ..................................................... 8

        1.  Plaintiffs Do Not Allege Facts Establishing That Mr. Deatsch's August 4, 2022 Statements Were False or Misleading ................................................................... 9

            a.  Plaintiffs' New CW Allegations Do Not Establish Facts Contradicting the Challenged Statements .................... 10

            b.  Mr. Deatsch's Statements Were Non-Actionable Corporate Optimism ............................................... 12

        2.  Plaintiffs Do Not Allege That Atlassian's August 19, 2022 Statement About Material Trends for Atlassian's 2022 Fiscal Year Was False or Misleading ..................................... 13

        3.  Plaintiffs Do Not Allege Facts Establishing That Ms. Bharadwaj's September 14, 2022 Statements Were False or Misleading ................................................................... 15

        4.  Incorporation by Reference of the Annual Report in the October 4, 2022 Form S-8 Did Not Require Updates to the Annual Report .............................................................. 18

    B.  Plaintiffs Still Fail to Plead a Strong Inference of Scienter ................. 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1.    Plaintiffs Do Not Identify Any Motive to Defraud................................. 19

2.    Plaintiffs' CWs Do Not Support a Strong Inference of
      Scienter ..................................................................................... 20

3.    Plaintiffs Do Not Plausibly Allege That Any Defendant
      Acted With an Intent to Deceive or Deliberate Recklessness.................. 21

4.    The Non-Fraudulent Inference Is More Compelling ............................. 24

C.    Plaintiffs Fail to State a Section 20(a) Claim........................................ 25

V.    CONCLUSION................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Bodri v. GoPro, Inc.*,
   252 F. Supp. 3d 912 (N.D. Cal. May 1, 2017) ......................................................................... 20

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ......................................................................... 20

*Campo v. Sears Holding Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ............................................................................................. 24

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) ........................................................................... 13

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................................................................... 11, 17

*Costabile v. Natus Med. Inc.*,
   293 F. Supp. 3d 994 (N.D. Cal. 2018) ..................................................................................... 12

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,
   2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ........................................................................ 20

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................................................. 18

*Ferreira v. Funko Inc.*,
   2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ........................................................................... 17

*Huang v. Higgins*,
   2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) ........................................................................ 21

*In re Alteryx, Inc. Sec. Litig.*,
   2021 WL 4551201 (C.D. Cal. June 17, 2021) ......................................................................... 25

*In re AnaptysBio, Inc. Sec. Litig.*,
   2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ......................................................................... 24

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................................... 21

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
   2017 WL 8791111 (C.D. Cal. Dec. 21, 2017) ......................................................................... 21

*In re Cisco Sys. Inc. Sec. Litig.*,
   2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ........................................................................ 24

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................. 24

*In re Fusion-io, Inc. Sec. Litig.*,
   2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .................................................... 10, 13

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ....................................................... 15

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ............................................................................... 15

*In re Pivotal Sec. Litig.*,
   2020 WL 4193384 (N.D. Cal. July 21, 2020) ........................................................ 25

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................... 10

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) ................................................................................... 15

*In re Twitter, Inc. Sec. Litig.*,
   506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd* 29 F.4th 611 (9th Cir. 2022) ............... 14, 16, 17

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................... 22, 24

*Kipling v. Flex Ltd.*,
   2020 WL 2793463 (N.D. Cal. May 29, 2020) ....................................................... 12

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ............................................................................... 22

*Macquarie Infrastructure Corp. v. Moab Part., L.P.*,
   2024 WL 1588706 (Apr. 12, 2024) ....................................................................... 15

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
   2010 WL 1473265 (C.D. Cal. Mar. 29, 2010) ....................................................... 12

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ........................................................................... 18, 19

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ......................................................... 8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ................................................................................... 8

*Pardi v. Tricida, Inc.*,
   2022 WL 3018144 (N.D. Cal. July 29, 2022) ........................................................ 24

*Park v. GoPro, Inc.*,
   2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)........................................................................ 19

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................................... 22

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) ...................................................................................... 20, 21

*Scheller v. Nutanix, Inc.*,
   450 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................................ 11

*Sneed v. AcelRx Pharms., Inc.*,
   2023 WL 4412164 (N.D. Cal. July 7, 2023)..................................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................................ 8

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ......................................................................... 10, 20

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .................................................................. 23

*Weston Family P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) .................................................................................... 9, 15, 19

*Wozniak v. Align Tech., Inc.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012) ...................................................................... 11, 21

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................... 8, 10, 12, 22

**STATUTES**

15 U.S.C. § 78u-4(b)(1)(B)....................................................................................................8

**REGULATIONS**

17 C.F.R. § 229.303 .............................................................................................................15

17 C.F.R. § 230.414 .............................................................................................................18

**GLOSSARY**

| Term | Definition |
| --- | --- |
| ¶ | Refers to the paragraphs of the Second Amended Complaint |
| Amended Complaint | Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 40) |
| Annual Report | Atlassian's annual report on Form 20-F for the fiscal year ended June 30, 2022, filed with the SEC on August 19, 2022 |
| Atlassian or the Company | Atlassian Corporation (and where applicable, Atlassian Corporation Plc) |
| CEO | Chief Executive Officer |
| COO | Chief Operating Officer |
| CRO | Chief Revenue Officer |
| CW | Confidential Witness |
| Defendants | Atlassian Corporation, Atlassian Corporation Plc, Michael Cannon-Brookes, Scott Farquhar, Anu Bharadwaj, and Cameron Deatsch |
| Dismissal Order | The Court's January 22, 2024 Order Granting Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. No. 53) |
| Ex. | Exhibits attached to the Declaration of Colleen C. Smith, filed concurrently herewith |
| Existing Paid User Expansion | Existing Atlassian paying customers who add additional paying users to their subscriptions |
| First quarter, Q1 or Q1 23 | First quarter of FY 2023 (July 1, 2022 – September 30, 2022) |
| Fourth quarter, Q4 or Q4 22 | Fourth quarter of FY 2022 (April 1, 2022 – June 30, 2022) |
| Free-to-Paid Conversion | Free customers (with between one and ten users) who convert to a paid subscription |
| FY 2022 | Fiscal year 2022 (July 1, 2021 – June 30, 2022) |
| FY 2023 | Fiscal year 2023 (July 1, 2022 – June 30, 2023) |
| GAAP | United States Generally Accepted Accounting Principles |
| Plaintiffs | Lead Plaintiffs City of Hollywood Firefighters' Pension Fund and Oklahoma Firefighters Pension and Retirement System |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SEC | United States Securities and Exchange Commission |
| Second Amended Complaint or SAC | Second Amended Class Action Complaint (Dkt. No. 59) |

## I.      INTRODUCTION

Plaintiffs' Second Amended Complaint suffers from the same flaws as the Amended Complaint and it too should be dismissed.  The Court rejected Plaintiffs' theory that Defendants fraudulently downplayed a slowdown in Free-to-Paid Conversions and omitted a slowdown in Existing Paid User Expansion because:  (1) Atlassian disclosed the Free-to-Paid Conversion slowdown, and Plaintiffs alleged no facts indicating it was anything but slight; (2) the slowdown in Existing Paid User Expansion did not begin until the second half of Q1 23, which is what Defendants disclosed; and (3) it was "not logical" to infer that Defendants would "affirmatively omit the full picture about the status of the company when talking to investors and analysts, and instead reveal the details eight weeks later."  The Second Amended Complaint is just more of the same, and the Court's prior ruling should apply again, this time with prejudice.

All Plaintiffs add to their new complaint are unspecific allegations from three new confidential witnesses.  But these allegations do nothing to establish either the falsity of any challenged statement or any intent of any Defendant to defraud investors, because the CWs say nothing about any specific metric at any specific point in time.  Without particularized allegations, the CWs cannot support Plaintiffs' claim that Defendants intentionally concealed— for just a few weeks—exactly how much two metrics were slowing and the supposedly material impact on Atlassian's business.  The CWs collectively claim only that "things" were "slowing down" at some point in time, but the CWs do not say *what* "things" were "slowing down," let alone suggest that Existing Paid User Expansion began to slow down sooner than mid-August 2022, as Defendants disclosed.  To the contrary, the CWs only confirm that the slowdown in Existing Paid User Expansion did *not* begin sooner, because they allege that Atlassian started a project in September 2022 *after that slowdown began*, to drive more collaboration with large customers.  The CW allegations similarly say nothing at all specific to Free-to-Paid Conversions—and they certainly do not suggest that the slowdown in this metric was more than "slight," as Defendants described.

Indeed, Plaintiffs still fail to allege facts suggesting there was an undisclosed material adverse impact on Atlassian during Q1 23, let alone that Defendants were aware of one in Q1 23,

but misleadingly omitted it.  The Court previously found that one challenged statement in September 2022 was alleged to be misleading because Ms. Bharadwaj did not affirmatively disclose a slowdown in Existing Paid User Expansion that had begun a few weeks earlier, but dismissed that challenge because Plaintiffs failed to plead scienter.  While the claim still fails on scienter, Defendants also request that the Court reconsider its falsity ruling because Plaintiffs do not identify any facts suggesting any Defendant was aware that the slowdown was already *material* or that it amounted to a *discernible* trend by September 2022.  Defendants were not required to speculate about whether a newly observed slowdown would *become* a material trend impacting the business, and Plaintiffs offer no facts suggesting Defendants had already determined that it was.

The CW allegations also do not remedy Plaintiffs' failure to plead any particularized facts showing that Defendants acted with scienter in making any of the challenged statements.  No CW is alleged to have been in a position to speak to any Defendant's state of mind.  And Plaintiffs still do not explain why any Defendant would mislead investors while supposedly knowing the "truth" would be revealed just a few weeks later, without seeking to capitalize on that alleged deception.  Instead, the more compelling inference remains true—Defendants updated investors each quarter on any macroeconomic impacts Atlassian was seeing.  That is not fraud, and the Second Amended Complaint should be dismissed with prejudice.

## II.   BACKGROUND[1]

### A.   Atlassian Achieves Growth by Providing Free Productivity-Enhancing Software and Then Expanding Its Customer Relationships

Atlassian is a technology company that develops, sells, and licenses team collaboration software designed to enhance productivity and help teams work together.  ¶¶ 5, 32.  Atlassian was founded in 2002 by Messrs. Cannon-Brookes and Farquhar, who serve as co-CEOs alongside then-COO Ms. Bharadwaj (who was promoted to President in February 2023) and CRO Mr. Deatsch.  ¶ 3.  Atlassian takes pride in its culture and values, and it prioritizes transparency and openness throughout the organization and with customers and investors.  ¶ 33.

---

[1] Additional background can be found in Defendants' prior motion to dismiss.  Dkt. No. 43.

1    Atlassian does not rely primarily on a traditional sales force to distribute and sell its

2    products.  ¶ 35.  Instead, Atlassian offers its products for free to new customers, up to ten users

3    per account.  ¶ 36.  It then generates most of its revenue when (1) a customer adds more than ten

4    users (Free-to-Paid Conversions), which accounts for approximately 10% of Atlassian's revenue,

5    or (2) an existing paying customer adds additional users for a fee (Existing Paid User

6    Expansion), which accounts for approximately 90% of Atlassian's revenue.  ¶¶ 36-38.  Atlassian

7    also generates revenue through upgrades by free or paid users to premium or enterprise plans that

8    include additional services and features more personalized to the user ("Subscription Upgrades").

9    Ex. A at 38, 39; Ex. D at 10.  Subscription Upgrades is a distinct metric measuring revenues

10   from users who upgrade subscriptions—but it also falls within either the 10% or 90% revenue

11   attributed to Free-to-Paid Conversions or Existing Paid User Expansion (depending on whether

12   the user upgrading their subscription was a free or paid user).  Ex. A at 38, 39; *see also* ¶ 68.

13   Atlassian has historically had a relatively linear sales cycle as opposed to relying on a

14   "hockey stick" increase in sales at the end of a quarter or year to meet targets.  ¶¶ 40-44.  In

15   August 2022, however, Atlassian noted that recent business transitions could "drive short-term

16   variability" (Ex. A at 39), and specifically warned that despite its historically linear sales cycle,

17   "quarterly financial results may fluctuate as a result of a variety of factors, many of which are

18   outside of our control" (*id.* at 10-11).  Atlassian also warned that "***the impact of the current***

19   ***economic uncertainty*** may cause customers to request concessions, including better pricing, or

20   to slow their rate of expansion or reduce their number of licenses, ***which may not be reflected***

21   ***immediately in our results of operations***."  *Id.* at 12 (emphasis added).

22   **B.      Atlassian Provides Q4 and FY 2022 Results and Q1 and FY 2023 Guidance,
             While Warning That Growth Could Be Impacted by Evolving Market
23           Conditions**

24   On August 4, 2022, Atlassian issued a press release and a detailed shareholder letter

25   announcing financial results for the fourth quarter and full fiscal year 2022, which ended June

26   30, 2022.  *See* Ex. C; ¶¶ 52-53.  Atlassian hosted an investor call the same day.  Ex. B; ¶¶ 54-55.

27   In the shareholder letter, Atlassian reported 36% year-over-year total revenue growth, but

28   warned of "variability" in total revenue growth going forward.  Ex. C at 14.  Atlassian projected

1   approximately 50% year-over-year growth in Cloud-based revenue, but again cautioned

2   investors that Atlassian was not "insulated from broader macroeconomic impacts" and instead

3   found itself "in a climate of widespread uncertainty." *Id.* at 2, 14.  Atlassian specifically

4   disclosed that it had already begun to see some softening in Free-to-Paid Conversions.  *Id.* at 14;

5   ¶ 55.  It considered that slowdown "modest" and told investors that "nothing we are seeing *right*

6   *now* is changing our outlook," but warned that everyone would need to "*remain vigilant* in this

7   environment." Ex. C at 2, 14 (emphasis added); ¶¶ 53-54.

8          Two weeks later, in its Annual Report, Atlassian further updated investors about several

9   macroeconomic pressures that could have a material effect on its revenues, including

10   "[w]eakening economic conditions as a result of the COVID-19 pandemic, rising inflation,

11   increases in interest rates, and Russia's invasion of Ukraine," and warned investors that the

12   extent of these potential impacts would "depend on future developments, which are uncertain

13   and cannot be predicted at this time." Ex. A at 66.  Atlassian cautioned that many of its

14   customers "may be adversely impacted by weakening economic conditions," and that Atlassian

15   "may experience elongated sales cycles and extended payment terms and concessions due to

16   weakening economic conditions." *Id.*  Atlassian noted, however, that it had not yet experienced

17   any material adverse trends from the macroeconomic environment. *Id.*

18          In September 2022, Ms. Bharadwaj spoke at an informal investor conference and

19   reiterated that Atlassian was not immune to "overall macroeconomic conditions." Ex. D at 9; ¶¶

20   65-66.  She repeated that Atlassian was "seeing a bit of softness over the past couple of months"

21   in Free-to-Paid Conversions.  Ex. D at 9.  Ms. Bharadwaj updated investors that she had not seen

22   "any discernable trend . . . in terms of the macroeconomic impact" on free or paid users

23   upgrading their subscriptions, and she warned investors that Existing Paid User Expansion was

24   "an area that we continue to monitor" and "that's going to be an important one to look at in the

25   current climate." *Id.* at 9-10; ¶ 68.

26   **C.     Atlassian Redomiciles From the United Kingdom to the United States**

27          Atlassian redomiciled its parent company to the United States (from the United

28   Kingdom), incorporating in Delaware, effective September 30, 2022, following board and

1   shareholder approval.  *E.g.*, Ex. C at 17; *see also* ¶ 18.  That redomiciliation required Atlassian to

2   file amendments to existing registration statements on Form S-8 for employee stock award plans,

3   which in turn required Atlassian to incorporate by reference its most recent financial statements.

4   ¶ 122.  Atlassian filed an amended Form S-8 on October 4, 2022, incorporating the Annual

5   Report and noting it covered the year ended June 30, 2022.  *Id.*; Ex. H at 2.

6       **D.**    **Atlassian Announces Q1 23 Financial Results That Met Guidance, but**

7              **Revises Forward-Looking Guidance for the Remainder of FY 2023**

8          On November 3, 2022, Atlassian announced financial results for the first quarter of fiscal

9   year 2023, covering the period July 1, 2022 to September 30, 2022.  Ex. E; Ex. F; ¶¶ 84-92.

10  Atlassian did not announce "poor financial results" (¶ 84), but rather that it *met its previously*

11  *issued revenue guidance* for the quarter.  *See* Ex. F at 12, 14; Ex. E at 1; Ex. C at 3.  Atlassian

12  announced that total revenue grew 31% year-over-year to $807.4 million, Ex. E at 1, which was

13  in line with guided revenue of between $795 and $810 million, *see* Ex. C at 14, as well as Cloud

14  revenue growth of 49% year-over-year, Ex. F at 11, in line with Atlassian's guidance of

15  approximately 50% growth, Ex. C at 14.

16         Despite strong first quarter results, Atlassian updated investors that it was "beginning to

17  see the impact" of economic headwinds on its business.  Ex. F at 2, 11.  Specifically, Atlassian

18  reported:  "1) We saw a more pronounced continuation of the trend discussed last quarter, where

19  fewer Free instances converted to paid plans; and 2) we also saw the growth of paid users from

20  existing customers slow in the second half of Q1."  *Id.* at 11.  Both of these developments were

21  "the result of companies tightening their belts and slowing their pace of hiring."  *Id.* at 2; ¶ 85;

22  *see also* Ex. G at 8, 10, 11.  To account for these newly observed slowdowns and to provide

23  investors with projections for the upcoming quarter, Atlassian lowered its Cloud-based full year

24  revenue guidance for its fiscal year, from 50% year-over-year projected growth to a range of

25  approximately 40% to 45% year-over-year projected growth for fiscal year 2023.  Ex. F at 15.

26      **E.**    **The Court Dismisses Plaintiffs' Amended Complaint**

27         After Atlassian revised its go-forward guidance in November 2022, Atlassian's stock

28  price declined.  ¶ 93.  Plaintiffs filed suit soon after.  Dkt. No. 1.

On January 22, 2024, the Court dismissed the Amended Complaint.  Dismissal Order, Dkt. No. 53.  The Court held that Mr. Deatsch's August 4, 2022 statements were not false or misleading because:  (1) Mr. Deatsch "told shareholders *in August*" that "there was a slowdown in Free-to-Paid Conversions," and Plaintiffs did not contest the accuracy of that disclosure, *id.* at 11, (2) the slowdown in Existing Paid User Expansion "began in the second half of Q1, after the August 4 call," so his statements did not "contradict[] anything that the defendants knew at the time," *id.* at 13, and (3) "defendants specifically warned investors and shareholders that they would likely see 'seasonality . . . over the next four quarters'" and "at most, [Atlassian's] linear sales cycle shifted in mid-August, so there was nothing for the defendants to warn about on August 4," *id.* at 12.  The Court held that the Annual Report was not false or misleading in discussing "trends" because "plaintiffs fail[ed] to allege that the defendants knew of *any* trend to Paid User Expansion by the time the report was published on August 19."  *Id.* at 16.

With respect to Ms. Bharadwaj's September 14, 2022 statements, the Court held the statements were not false or misleading with respect to Free-to-Paid Conversions because "defendants told the market about the Free to Paid slowdown in August, and [Ms.] Bharadwaj's statements in September convey essentially the same information."  *Id.* at 18.  While the Court considered Ms. Bharadwaj's statements allegedly "misleading because they provided no commentary on the Paid User Expansion slowdown that began in mid-August," *id.* at 18, it nonetheless dismissed Plaintiffs' challenge for failure to sufficiently allege scienter, including because they "fail[ed] to plead a logical motive" to commit fraud and because there was "far more support" for the non-fraudulent inference that Ms. Bharadwaj's voluntary mid-quarter statements were made "to provide open and regular communication to [] shareholders during uncertain economic times."  *Id.* at 22-25.  In comparing this innocent explanation against an inference of scienter, the Court noted it was "not . . . even a 'close question.'"  *Id.* at 25.

### F.    Plaintiffs Amend Again Without Curing the Amended Complaint's Flaws

Plaintiffs' Second Amended Complaint is based on the same claims the Court concluded were not sufficient.  Plaintiffs' only additions are allegations from three new former employees:

1      <u>CW3</u>.  CW3, described as the Head of Product & Business Operations, Work

2    Management from June 2022 through June 2023, ¶ 49 n.6, alleges that "things" were "slowing

3    down" and Atlassian was not "growing like gangbusters" when he joined Atlassian in June 2022.

4    ¶ 74.  CW3 claims he presented "metrics" to Ms. Bharadwaj "either directly in meetings or in a

5    report that he submitted for her review," and that "on other occasions his team's report was

6    incorporated into a document that was presented to Defendants Bharadwaj, Cannon-Brookes,

7    and Farquhar."  ¶ 76.  Plaintiffs conspicuously don't say *what* "things" were slowing down,

8    *which* "metrics" were presented, *what* the "report" said, or *when* any of this happened.  CW3

9    also alleges Atlassian as a whole "was not growing at 50% year-over-year growth," but makes no

10   mention of Atlassian's consistent Company-wide revenue growth being historically around 30%

11   while *Cloud* revenue growth was projected to grow by approximately 50%.  ¶ 74.  CW3 claims

12   (erroneously) that in September 2022, Defendants began working on an internal project, labeled

13   "Project Big Fish," aimed at targeting large customers to increase their collaboration with

14   Atlassian, with a second phase coming at some later but unstated time and labeled "Project Back

15   to Fifty," aimed at bringing Atlassian's Cloud revenue back to 50% year-over-year growth.

16   ¶¶ 80-83, 110.

17      <u>CW4</u>.  CW4, described as a Sales Operation Program Manager from August 2022 to June

18   2023, ¶ 82 n.8, claims that Atlassian employees were told to "re-direct our efforts" onto "revenue

19   driving initiatives" at some unstated point in time and that Atlassian instituted a project called

20   "Back to Fifty" to get Atlassian "back to reporting 50% year-over-year growth," presumably

21   after Atlassian reported 49% year-over-year Cloud revenue growth on November 3, 2022.

22   ¶¶ 82-83.

23      <u>CW5</u>.  CW5, described as a Principal Executive Recruiter from March 2022 until May

24   2023 tasked with recruiting engineers, ¶ 83 n.9, claims that Atlassian took "additional steps" at

25   some unspecified time to restore "50% cloud revenue growth."  ¶ 83 & n.9.

26   **III.    LEGAL STANDARD**

27      To state a Section 10(b) securities fraud claim, Plaintiffs must plead with particularity

28   "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

1   between the misrepresentation or omission and the purchase or sale of a security; (4) reliance

2   upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Dismissal

3   Order at 8. Plaintiffs "must meet both the heightened pleading requirements for fraud under

4   FRCP 9(b) and the exacting pleading requirements of the PSLRA." *Id.* at 4.

5        In order to plead a claim with requisite particularity, Plaintiffs must "specify each

6   statement alleged to have been misleading, [and] the reasons or reasons why the statement is

7   misleading." *Id.* at 5 (quoting 15 U.S.C. § 78u-4(b)(1)(B)). And they must plead particularized

8   facts giving rise to a strong inference of scienter by demonstrating that Defendants "made false

9   or misleading statements either intentionally or with deliberate recklessness." *Id.* (quoting *Zucco*

10  *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). "Facts showing mere

11  recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to

12  establish a strong inference of deliberate recklessness." *Id.* at 5. And "[w]here, as here, the

13  Plaintiffs seek to hold individuals and a company liable on a securities fraud theory," they must

14  "allege scienter with respect to each of the individual defendants." *Or. Pub. Emps. Ret. Fund v.*

15  *Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). The Court "must consider plausible,

16  nonculpable explanations for the defendant's conduct," and any "inference of scienter . . . must

17  be cogent and compelling, thus strong in light of other explanations." Dismissal Order at 22

18  (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). In ruling on a

19  motion to dismiss, courts are "not required to accept as true 'allegations that are merely

20  conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* at 4.

21  **IV.   ARGUMENT**

22       **A.   Plaintiffs Still Fail to Plead Falsity**

23       The Second Amended Complaint challenges the same statements Plaintiffs challenged

24  before. ¶¶ 107-23. But once again, Plaintiffs offer no facts establishing that any of the

25  challenged statements were false or misleading when made, or were contradicted by

26  contemporaneous facts. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3

27  (N.D. Cal. Dec. 29, 2016) (dismissing securities claims where "allegations omit

28  contemporaneous facts that would establish a contradiction between the alleged materially

LATHAM&WATKINS
ATTORNEYS AT LAW

misleading statements and reality"); *see also Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) ("[f]or a statement to be false or misleading, it must 'directly contradict what the defendant knew at the time' or 'omit material information'").  Plaintiffs' inclusion of additional CW testimony vaguely asserting that "things" were "slowing down" at some unspecified point in time lacks sufficient reliability and specificity to establish the falsity of any challenged statement.

### 1.    Plaintiffs Do Not Allege Facts Establishing That Mr. Deatsch's August 4, 2022 Statements Were False or Misleading

Plaintiffs continue to challenge Mr. Deatsch's statements during Atlassian's August 4, 2022 earnings call discussing results for the quarter and year ended June 30, 2022:

- Statement 1:  "The good news as of to date is we have yet to see any specific trend geographically or even in industry segments or in customer size that gives us pause or worry to date.  So, something we continue to watch like a hawk, but there is no news to share today."  ¶ 108.
- Statement 2:  "[W]e have not seen any significant shift in customer demand across our product lines[.]"  *Id.*
- Statement 4:  Free-to-Paid Conversions slowdown was a "slight thing" that "does not take away from the continued growth we see in our existing customer base that also drives more than 90% of our revenue in the existing year."  ¶ 111.[2]

Plaintiffs repeat their contention that these statements were false because:  (1) Defendants "admitted at the end of the Class Period" that the slowdown in Free-to-Paid Conversions was a material "trend," and therefore, not a "slight thing," and (2) Defendants allegedly "knew of the negative paid user expansion 'trend' at the time of the statements."  ¶¶ 109, 112.  But the Court rejected that very challenge.  Dismissal Order at 11-15.  The Court found that Plaintiffs failed to "allege facts that [the] slowdown in Free to Paid Conversions was anything more than 'slight' in August."  *Id.* at 15.  The Court also found that the slowdown in Existing Paid User Expansion "began in the second half of Q1, after the August 4 call," and thus Mr. Deatsch's statements did not "contradict[] anything that the defendants knew at the time."  *Id.* at 13.

---

[2] Plaintiffs have abandoned their challenge to Statement 3.  *See* Dismissal Order at 13.

Plaintiffs offer no new allegations that would change the Court's holding that the statements were not misleading.  The only additions to the SAC are unspecific CW allegations that are untethered to any particular metric at any exact time and thus do not support the falsity of any challenged statement.  And regardless, the CWs are not adequately pled to be in a position to know what they claim, even assuming they purport to speak about company-wide metrics.

### a. Plaintiffs' New CW Allegations Do Not Establish Facts Contradicting the Challenged Statements

Plaintiffs' CW allegations lack any particularity and do not suggest that any challenged statement was false when made.[3]  *Zucco*, 552 F.3d at 995.  CW4 and CW5 allege only that employees were put onto "revenue driving initiatives," and that at some point in time, Atlassian "rebalance[d] priorities" to get back to 50% Cloud revenue growth.  ¶¶ 82-83.  But they do not explain what those "initiatives" were, or when the initiatives or rebalancing of priorities happened.  *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1009 (N.D. Cal. 2017) (rejecting CW allegations that fail to show "specific contemporaneous . . . conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made").

Plaintiffs focus mainly on CW3, but CW3 does not claim to provide any level of detail about *what* information was reported regarding *what* unidentified metrics, to *whom*, and *when*. *See Solarcity*, 274 F. Supp. 3d at 1009.  And CW3 does not allege what "things" were slowing, to what extent, when, or who knew about them.  At most, CW3 claims that when he joined Atlassian in June 2022, unidentified "things" were "slowing down" and Atlassian was not

---

[3] As in the prior Complaint, Plaintiffs still do not allege that CW1 or CW2 was a part of, or played any role in, Atlassian's sales process, financial projections or accounting, or strategic analysis, *see* ¶¶ 45, 48, and Plaintiffs' newfound reliance on CW4 and CW5 is similarly insufficient.  Each of these CWs worked at Atlassian for a limited amount of time (and CW2 left Atlassian before the class period), and Plaintiffs do not allege any of the CWs was in a position to know anything about the challenged statements, nor that any of these CWs ever interacted with any Defendant.  ¶¶ 45 n.4, 48 n.5, 82 n.8, 83 n.9; *see In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) (requiring CW accounts to be "contemporaneous" with the alleged misstatements); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (rejecting CW statements where there were no allegations the CW had direct or indirect contact with the individual defendants).

"growing like gangbusters" as before, but growth in unknown areas "was slower than expected." ¶ 74. CW3 also alleges that he and his team reviewed "key metrics tied to Atlassian's revenues" "on a daily basis." ¶ 73. But CW3 provides "no hard numbers . . . data or other detail" about what those metrics were, what they showed, how they relate to any challenged statement, or with whom he shared his review findings. *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012); *Scheller v. Nutanix, Inc.,* 450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (rejecting CW statements about allegedly undisclosed hiring freezes where CWs "fail[ed] to provide any details about these hiring freezes, such as how many there were, how long they lasted, how often they were instituted, how many employees they affected, or what locations they covered."). CW3 *never mentions* Free-to-Paid Conversions or Existing Paid User Expansion, including what these metrics were in June, July, and August 2022, whether either was declining, or how they differed from any prior time period. When CW3 does use actual numbers, he does not tie the numbers to the particular metric at issue—instead, Plaintiffs intentionally muddle what CW3 is discussing. For example, CW3 claims that "while Atlassian was targeting growth at 50% year-over-year, internal metrics showed that the Company was only growing at a rate of 30% for the year." ¶¶ 75, 77. CW3 conspicuously does *not* say that *Cloud* revenues were only growing at a rate of 30%. Rather, as Plaintiffs' own allegations admit, Atlassian was targeting growth of *Cloud* revenues at 50% *and it was hitting that target or coming darn close*. ¶ 83, Ex. F at 11 (reporting 49% growth in Cloud revenues in Q1 2023). As Plaintiffs' allegations also admit, Atlassian's *total* revenue was growing approximately 30-34% year-over-year—which was in line with Atlassian's targets for *total* revenue guidance for Q1 23, Ex. C at 11, 14; Ex. F at 12. Plaintiffs' allegations about *targeted* growth and *actual* growth rates have nothing to do with each other. Plaintiffs' repeated muddling of Atlassian's metrics through insufficiently described CWs fails to allege falsity with particularity.

The CW allegations are also insufficiently particularized as to timing. CW4 and CW5 do not speak to timing at all, and CW3 never identifies with any particularity when he learned of any supposed slowdown or if and when he reported any information to Defendants. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec.

17, 2019) (rejecting CW allegations that "lack in particularity as to time").  CWs alleging that at some time Atlassian focused on "revenue driving initiatives" says nothing about any challenged statement.  ¶¶ 80-83.  All told, the CWs' vague assertions do not establish facts contradicting any challenged statement (including those on August 4), much less with the particularity required by the PSLRA.  *See Kipling v. Flex Ltd.*, 2020 WL 2793463, at *18 (N.D. Cal. May 29, 2020) (rejecting CW statements that were "not indicative of the falsity" of any challenged statements).

Plaintiffs also fail to plead particularized facts sufficient to establish that the new CWs were in a position to know what they purport to allege.  Plaintiffs allege CW3 was "Head of Product Strategy and Business Operations in the Work Management division," and supposedly "was responsible for tracking numbers and forecasts for leading growth strategy, business performance analysis, and long-range planning" for unnamed Atlassian products.  ¶ 73. Plaintiffs allege that CW4 was a Sales Operation Program Manager spearheading "the launch of new products" and that CW5 was a recruiter tasked with recruiting engineers.  ¶¶ 82-83 & nn.8-9.  However, Plaintiffs do not explain how someone in any of the new CWs' positions would have been privy to detailed, company-wide metrics aggregated at a level necessary to be relevant to the challenged statements made by Atlassian's most senior executives, much less instantaneously upon employment at Atlassian (in June 2022 for CW3, or August 2022 for CW4).  *See Zucco,* 552 F.3d at 996 (rejecting CWs who "were simply not positioned to know the information alleged"); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1018 (N.D. Cal. 2018) (rejecting CW testimony where plaintiff "failed to allege sufficient facts from which it can be inferred that [CW] based his statements on his own personal knowledge or other reliable sources"); *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, 2010 WL 1473265, at *2 (C.D. Cal. Mar. 29, 2010) (rejecting CW testimony where "Plaintiff's description of [the CW] [did] not link her position to any personal knowledge that would implicate Defendants").

### b.   Mr. Deatsch's Statements Were Non-Actionable Corporate Optimism

The Court did not previously consider whether Mr. Deatsch's August 4, 2022 statements were non-actionable corporate optimism, but invited Defendants to "reraise that argument on a

subsequent motion." Dismissal Order at 15. Plaintiffs' challenge to Statements 1, 2, and 4 is precisely a quibble about the nonquantifiable adjectives Mr. Deatsch used. ¶¶ 108, 111. Plaintiffs allege that terms like "watch like a hawk," "significant shift," demand that is "strong," and a "slight" slowdown" were misleading because the Free-to-Paid Conversion slowdown was not "slight." *Id.* But courts consistently find such "vague, generalized assertions of corporate optimism" to be inactionable because "no reasonable investor would rely on such statements." *See Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *8 (N.D. Cal. July 7, 2023); *see also In re Fusion-io*, 2015 WL 661869 at *14 (rejecting challenge to statements about "excellent results" and "significant sales gains" as corporate optimism); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 6441843, at *11-12 (N.D. Cal. Dec. 9, 2013) (dismissing as corporate optimism statements reporting a "strong" quarter and "strong growth"). This is particularly true here where Plaintiffs do not allege any facts explaining *how* the adjectives themselves—which is what Plaintiffs challenge—were misleading. There are no allegations, for example, quantifying any slowdown at the time of the challenged statements or explaining why Defendants were required under the securities laws to use Plaintiffs' preferred terms. The Second Amended Complaint continues to be entirely devoid of any facts suggesting that Free-to-Paid Conversions had slowed down more than what Mr. Deatsch described.

### 2. Plaintiffs Do Not Allege That Atlassian's August 19, 2022 Statement About Material Trends for Atlassian's *2022* Fiscal Year Was False or Misleading

Plaintiffs again challenge one statement in Atlassian's August 19, 2022 Annual Report:

> <u>Statement 5</u>: Other than as disclosed elsewhere in this Annual Report, we are not aware of any trends, uncertainties, demands, commitments or events for the current fiscal year that are reasonably likely to have a material effect on our revenues, income, profitability, liquidity or capital reserves, or that caused the disclosed financial information to be not necessarily indicative of future results of operations or financial conditions.

¶ 114; Ex. A at 66. Plaintiffs reargue that the statement was false and misleading because Defendants were allegedly aware by August 19, 2022 of "two material adverse trends" in Free-to-Paid Conversions and Existing Paid User Expansion. ¶ 115.

1     In rejecting this claim, the Court held that "[r]egardless of which year the report refers to

2  [FY22 or FY23], the plaintiffs fail to allege that the defendants knew of *any* trend to Paid User

3  Expansion by the time the report was published on August 19."  Dismissal Order at 16.

4  Plaintiffs' new CWs do not change this ruling.  They allege only that "things" were "slowing

5  down" at some point after June 2022, but they do not speak of any specific metric, and so cannot

6  possibly support Plaintiffs' speculation that, contrary to the Annual Report's disclosure,

7  Defendants were supposedly aware of material adverse trends in either metric as of August 19.

8     Despite this Court's ruling that "context is key," Plaintiffs ignore both the actual

9  statement and its context.  The actual statement in the Annual Report said, "we are not aware of

10  any trends, uncertainties, demands, commitments, or events for the current fiscal year that are

11  reasonably likely to have a material effect on our revenues."  Ex. A at 66.  Even if any metric

12  had been slowing as of August 19, Plaintiffs have alleged no fact suggesting such a slowdown

13  amounted to a "*trend … reasonably likely to have a material* effect on our revenues."  *Id.*

14  (emphasis added).  The CWs—and the entire Second Amended Complaint—lack a single fact

15  describing the *amount* of any slowdown in any metric at the time the Annual Report was filed on

16  August 19.  That one minor metric (Free-to-Paid Conversions) was slowing and another *began*

17  slowing in mid-August does not plausibly suggest that *either* metric had slowed to such an extent

18  as of August 19 that Defendants were misleading in saying they were not *aware* of any material

19  adverse trends.  Plaintiffs fail to allege that any material adverse trend *existed* in Existing Paid

20  User Expansion or Free-to-Paid Conversions as of August 19.  *See In re Twitter, Inc. Sec. Litig.*,

21  506 F. Supp. 3d 867, 885-86 (N.D. Cal. 2020) (rejecting allegations "that defendants would have

22  been able to determine accurately the true amount of the decline . . . based on a single month of

23  data"), *aff'd* 29 F.4th 611 (9th Cir. 2022).

24     And as to context, as the Court recognized, just above Statement 5, the Annual Report

25  "discusses how macro-economic conditions did not materially impact Atlassian's 'financial

26  conditions or results of operations during the fiscal year ended on June 30, 2022,' but noted that

27  the future risks posed by the changing macro-economic environment were 'uncertain and cannot

28  be predicted at this time.'"  Dismissal Order at 16 (quoting Ex. A at 66).  This clarification only

underscores that Statement 5 did not purport to speak about trends or any information that post-dated June 30, 2022, and instead *warned* investors that the future was uncertain.[4]  *See Twitter*, 29 F.4th at 621-22 (no falsity where "context makes clear" challenged statements were not misleading); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 (N.D. Cal. Mar. 29, 2019) (dismissing claims where "relevant context" including "words and sentences surrounding the challenged phrases" undermined plaintiff's allegations); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996) (viewing statement "in context," including disclosed risk whose later materialization had no bearing "on the accuracy of Defendants' predictions" in earlier report).

Finally, to the extent Plaintiffs still claim the Annual Report violates Item 303, 17 C.F.R. § 229.303, which requires disclosure of "known trends or uncertainties" likely to have a material impact on a company's financial results, ¶¶ 100-04, this argument fares even worse than before. Dismissal Order at 25.  Just recently, the Supreme Court held in a unanimous decision that the alleged omission of information required by Item 303 is not sufficient to state a Section 10(b) claim.  *Macquarie Infrastructure Corp. v. Moab Part., L.P.*, 2024 WL 1588706 (Apr. 12, 2024); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014) ("Item 303 does not create a duty to disclose for purposes of Section 10(b).").

### 3.     Plaintiffs Do Not Allege Facts Establishing That Ms. Bharadwaj's September 14, 2022 Statements Were False or Misleading

Plaintiffs again challenge three of Ms. Bharadwaj's statements at a September 14, 2022 Goldman Sachs investor conference (Statements 6-8) where she discussed macroeconomic headwinds and their impact (if any) on various areas of the business.  ¶¶ 117-119.  As with the other challenged statements, Plaintiffs claim these statements were false or misleading because Defendants were supposedly aware of material adverse trends in Free-to-Paid Conversions and Existing Paid User Expansion in September 2022, but failed to disclose them.  ¶¶ 120-121.

---

[4] While the Court did not expressly decide whether Statement 5 referred to FY 2022 or 2023, Plaintiffs have offered no support for their allegation that statements in an Annual Report for FY 2022 would somehow purport to speak to the next fiscal year that was just a few weeks old.

LATHAM&WATKINS LLP
Attorneys At Law

1    The Court rejected Plaintiffs' claim with respect to Free-to-Paid Conversions because

2    "defendants told the market about the Free to Paid slowdown in August, and Ms. Bharadwaj's

3    statements in September convey essentially the same information."  Dismissal Order at 18.

4    Plaintiffs add nothing to change that finding, nor do they "plead that the Free to Paid Conversion

5    metric worsened between August 4 and September 14 in a way that would render the 'bit of

6    softness' comment [] misleading, false, or inaccurate," as the Court required.  *Id.*

7        While the Court found Ms. Bharadwaj's statements were alleged to be misleading

8    because she "provided no commentary on the Paid User Expansion slowdown that began in mid-

9    August," *id.* at 18, Defendants request that the Court revisit that ruling.  *Twitter* is instructive.

10   There, defendants spoke about ongoing work on one product that plaintiff alleged was facing a

11   demand slowdown.  506 F. Supp. 3d at 885.  The court rejected plaintiff's falsity theory holding

12   plaintiffs had not alleged the relevant metric "was materially declining or that [defendants] knew

13   as much at the time of [the challenged] statements."  *Id.* at 885.  The court held it was not

14   "plausible that defendants would have been able to determine accurately the true amount of the

15   decline in [the relevant product] ***based on a single month of data***," and defendants "do not have

16   a duty to disclose matters that are merely speculative."  *Id.* at 886 (emphasis added).

17       The same situation exists here for two reasons.  First, Plaintiffs do not allege that Existing

18   Paid User Expansion was slowing down *materially* as of September 14, just four weeks after the

19   alleged slowdown began; second, they do not allege that she "*knew* as much at the time of [her]

20   September [14] statements." *Id.* at 885 (emphasis added).  Plaintiffs allege only that the metric

21   *began* to slow down in mid-August.  *See, e.g.*, ¶ 120.  Plaintiffs and their CWs do not allege a

22   single fact about *the extent* of the slowdown, much less that the slowdown was material or that

23   Ms. Bharadwaj was aware of it.  Instead, Plaintiffs point to the November 2022 disclosure

24   following the end of the quarter that Atlassian "encountered two primary revenue headwinds

25   during the [first] quarter from changes in the macroeconomic environment," and updated its

26   forward-looking guidance "assum[ing] these trends will persist."  Ex. F at 2, 11.  But as the

27   *Twitter* court held, regardless of the full quarter's impact and what Defendants learned about the

28   decline months *later*, Plaintiffs must allege particular facts (i) showing a material decline *at the*

1    *time* of the challenged statement, and (ii) plausibly suggesting the Defendants "would have been

2    able to determine accurately the true amount of the decline … based on a single month of data."

3    *Twitter*, 506 F. Supp. 3d at 885-86.  Defendants are not required to *speculate* about whether a

4    slowdown is, on the one hand, just a blip in data that will be cured in September, or something

5    that will continue and subsequently have a material impact on financial results.  *See id.*

6    ("Defendants do not have a duty to disclose matters that are merely speculative.").

7        The information that Ms. Bharadwaj actually did provide also shows she did not mislead

8    investors about Existing Paid User Expansion—to the contrary, she expressly warned that

9    Atlassian was monitoring the metric.  As the Court recognized, Ms. Bharadwaj reiterated the

10   previously disclosed slowdown in Free-to-Paid Conversions, and she stated she had not seen

11   "any discernible trend" in Subscription Upgrades.  Dismissal Order at 18; Ex. D at 9-10.  She

12   also expressly warned investors that Existing Paid User Expansion was a metric Defendants were

13   "continu[ing] to monitor" and "an important one to look at in the current climate."  Ex. D at 10.

14   None of these statements triggered any obligation to say more.  Plaintiffs have not alleged any

15   fact suggesting there was already a "discernible trend" in Existing Paid User Expansion as of

16   September 14, 2022 beyond the slight slowdown Defendants had already described.  Certainly,

17   Plaintiffs do not allege facts showing that the metric had already slowed down *materially* by the

18   time of her statements, or that Ms. Bharadwaj was aware of it.  And Ms. Bharadwaj had no duty

19   to speculate that it *would* slow down materially.  *Twitter*, 506 F. Supp. 3d at 885-86; *see also*

20   *Oracle*, 2019 WL 6877195, at *12 (finding no duty to disclose challenged conduct "absent an

21   affirmative representation" about same conduct).

22       Ms. Bharadwaj made no affirmative representation about what Atlassian was seeing in

23   Existing Paid User Expansion—in direct contrast to other discussed metrics—and instead

24   "warn[ed]" that metric "was an issue to keep an eye on moving forward."  *Ferreira v. Funko*

25   *Inc.*, 2021 WL 880400, at *13 (C.D. Cal. Feb. 25, 2021).

26

27

28

1    **4.    Incorporation by Reference of the Annual Report in the October 4,**
2    **2022 Form S-8 Did Not Require Updates to the Annual Report**

3        The Court already rejected Plaintiffs' challenge to Atlassian's incorporation of its Annual

4    Report by reference in its October 4, 2022 Form S-8.  Dismissal Order at 20 (Statement 9).  The

5    Court explicitly ordered that any amendment to the complaint must identify the law that requires

6    a company to update a Form S-8 "if the incorporated document was not false or misleading *when*

7    *the document was made.*"  *Id.* (emphasis added).  Plaintiffs did not follow the Court's instruction.

8    Plaintiffs cite only an inapposite regulation that relates to successor entities disclosing

9    information "necessary to keep the registration statement from being misleading in any material

10   respect."  ¶ 123 (citing 17 C.F.R. § 230.414).  But the Form S-8 here made clear that the Annual

11   Report covered the year ended June 30, 2022.  Ex. H.  Nothing about the incorporation of the

12   Annual Report that was expressly limited to that period could be considered misleading or

13   trigger some obligation to update an annual report.  Such a requirement would be entirely

14   untenable, and Plaintiffs' failure to identify any obligation for Atlassian to update annual

15   financial results during the next financial year is dispositive.

16   **B.    Plaintiffs Still Fail to Plead a Strong Inference of Scienter**

17       In addition to their failure to allege any false statement, Plaintiffs' claims should again be

18   dismissed for the independent reason that Plaintiffs still fail to plead particularized facts

19   supporting a strong inference of scienter.  *See* Dismissal Order at 22.  Plaintiffs' heightened

20   pleading burden under Rule 9(b) to establish a strong inference of scienter "is not an easy

21   standard to comply with," nor "was [it] intended to be."  *See Eminence Cap., LLC v. Aspeon,*

22   *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th

23   Cir. 2020).  Plaintiffs' scienter allegations still come nowhere close to satisfying their heavy

24   burden.  Most fundamentally, Plaintiffs once again "fail to plead a logical motive" for

25   Defendants' purported fraud, Dismissal Order at 22, and instead ask this Court to "check [its]

26   disbelief at the door," *Nguyen,* 962 F.3d at 415, and find fraud where Defendants purportedly

27   misled investors about impacts from macroeconomic headwinds knowing the truth would come

28   out just a couple of months later without anyone trying to capitalize on that supposed knowledge.

1    Plaintiffs' theory makes no sense and it ignores the more "plausible, nonculpable explanation"

2    that Defendants were simply "trying to provide open and regular communication to their

3    shareholders during uncertain economic times."  Dismissal Order at 22-25.

### 1.    Plaintiffs Do Not Identify Any Motive to Defraud

5         Plaintiffs' sole allegation in support of Defendants' purported motive to defraud investors

6    is once again relegated to a single footnote alleging that Messrs. Farquhar and Cannon-Brookes

7    sold stock during the class period pursuant to longstanding Rule 10b5-1 trading plans that result

8    in the sale of exactly the same number of shares across every single trading day during the year.

9    *See* ¶ 127 n.21; Ex. I.  But as the Court previously recognized, these stock sales are "not

10   sufficient to show that the [] defendants had motive to defraud" because Plaintiffs concede the

11   sales were "not dramatically out of line with these Defendants' prior trading practices," and

12   "stock sales by corporate insiders are suspicious only when they are dramatically out of line with

13   prior trading practices at times calculated to maximize the personal benefit from undisclosed

14   inside information."  Dismissal Order at 22-23 (quoting *Weston*, 2023 WL 3000583, at *22); *see*

15   *also Park v. GoPro, Inc.,* 2019 WL 1231175, at *23 (N.D. Cal. Mar. 15, 2019) (holding that

16   trades pursuant to non-discretionary 10b5-1 plans negate inference of scienter).

17        At bottom, Plaintiffs' scienter theory still rests on the implausible notion that Defendants

18   deliberately misled investors about Atlassian's prospects between August and October 2022

19   while purportedly knowing Atlassian would have to reduce its financial guidance in November

20   2022 due to macroeconomic headwinds.  But the Ninth Circuit has held that courts need not and

21   should not accept such an illogical motive.  *See Nguyen*, 962 F.3d at 415-16 (holding fraud

22   theory implausible where complaint lacked any allegations that defendants had attempted to

23   profit from false statements; it "does not resonate in common experience" for a company to

24   artificially inflate stock prices before "fac[ing] the inevitable fallout").  As this Court recognized,

25   "it is not logical that these individual defendants would . . . affirmatively omit the full picture

26   about the status of the company when talking to investors and analysts, and instead reveal the

27   details eight weeks later in a letter to shareholders."  Dismissal Order at 23.  Plaintiffs' attempt to

28   manufacture fraud without any plausible motive "makes it much less likely [they] can show a

1    strong inference of scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108

2    (9th Cir. 2021); *see also Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. May 1, 2017)

3    (the "absence of a motive allegation . . . significantly undermine[s] a plaintiff's theory of fraud").

4                    **2.    Plaintiffs' CWs Do Not Support a Strong Inference of Scienter**

5                    Plaintiffs' CWs do not salvage their deficient scienter allegations because Plaintiffs fail to

6    allege with particularity that any information was known or conveyed to any Defendant that

7    would undermine any challenged statement.  No CW alleges *any* specific communications with

8    Messrs. Deatsch, Cannon-Brookes, or Farquhar, meaning their testimony has no bearing on the

9    scienter of those Defendants.  *See Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,

10   2021 WL 4199273, at *8 (N.D. Cal. Sept. 15, 2021) (holding CW failed to support an inference

11   of scienter where CW did not allege "when and whether" issue "was actually conveyed" to

12   defendants); *Veal*, 423 F. Supp. 3d at 814.  At most, CW3 claims Defendants had weekly or

13   monthly meetings where metrics were discussed, but he does not allege that *he* attended any such

14   meeting during the class period.  ¶ 50.  Instead, he says he "was present at many of these

15   meetings during his tenure." *Id.*  That does not meet Plaintiffs' burden of alleging scienter on a

16   defendant-by-defendant basis with particularity.  *Browning v. Amyris, Inc.*, 2014 WL 1285175, at

17   *18 n.6 (N.D. Cal. Mar. 24, 2014) (rejecting CW allegations as "too vague and unsupported to

18   show a strong inference of scienter" related to CWs alleging management must have been aware

19   of adverse data).  CW3 also claims he presented Ms. Bharadwaj unidentified "metrics" "either

20   directly in meetings or in a report," and "on other occasions his team's report was incorporated

21   into a document that was presented to Defendants Bharadwaj, Cannon-Brookes, and Farquhar."

22   ¶ 76.  But CW3 provides no detail on *when* these meetings took place, *when* these reports were

23   submitted (let alone *when* they were reviewed), and most importantly, he does not allege with

24   any specificity *what* information was communicated in these supposed meetings and reports or

25   how they undermine or relate to any challenged statement.  Moreover, CW3 reporting to Ms.

26   Bharadwaj "directly" or "in a report" is implausible given Plaintiffs' admission that CW3

27   reported to individuals who in turn reported to Ms. Bharadwaj.  ¶¶ 49 n.6, 73.

28

1    Generally alleging that "metrics" were presented does not meet Plaintiffs' heightened

2    burden.  *See Wozniak*, 850 F. Supp. 2d at 1043 (no scienter where CW referenced presentation

3    that "contained key metrics," but "provid[ed] no detail as to the content of those slides, let alone

4    data sufficient to contradict [defendant's] statements"); *see also In re Apple Inc. Sec. Litig.*, 2020

5    WL 2857397, at *23 (N.D. Cal. June 2, 2020) (no scienter where CWs did not "detail the

6    specific facts" communicated to defendants "that render defendants' statements allegedly false");

7    *Huang v. Higgins*, 2019 WL 1245136, at *7 (N.D. Cal. Mar. 18, 2019) (rejecting CWs as lacking

8    the "specificity in time, context, and details that courts have frequently required as indicia of

9    reliability" where statements "[did] not cite any specific conversation, let alone details such as

10   when and with whom a conversation took place, or what was said").  CW3's vague and

11   inconsistent allegations, *see supra* Section IV.A.1.a, fail to establish any Defendant's scienter.

### 3.   Plaintiffs Do Not Plausibly Allege That Any Defendant Acted With an Intent to Deceive or Deliberate Recklessness

14    Lacking a cognizable theory of motive to defraud or reliable CW testimony, Plaintiffs

15   again do not plausibly allege any particularized facts suggesting Defendants made any of the

16   challenged statements knowing that they were false at the time they were made.  *See In re*

17   *Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 8791111, at *6 (C.D. Cal. Dec. 21, 2017) (no

18   scienter absent particularized facts showing defendants had actual knowledge of information

19   contradicting challenged statements).  Plaintiffs fall back on traditional scienter buzzwords, but

20   none supports the inference that Defendants intended to defraud investors.

21    <u>Monitoring of Metrics Does Not Support Scienter</u>.  Plaintiffs continue to claim

22   Defendants "monitored trends and subscriber metrics closely" and that, as a result, they had

23   "direct and detailed knowledge of information contradicting their public statements."  ¶ 127.  But

24   Plaintiffs still do not allege any fact known by Defendants that contradicts *any* challenged

25   statement.  Alleging generally that Defendants monitored unspecified metrics without alleging

26   what those metrics showed and when, let alone that they reflected anything undermining the

27   challenged statements, fails to establish an inference of scienter.  *See Prodanova*, 993 F.3d at

28   1109 (requiring facts that defendants had "detailed and contemporaneous knowledge" of

1   information contradicting challenged statements); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp.

2   2d 1148, 1175 (C.D. Cal. 2007) (holding that "mere access" to unspecified information "even

3   combined with allegations of a hands-on management style, is not enough to show deliberate

4   recklessness"); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th

5   Cir. 2014) (finding "[m]ere access to reports containing undisclosed sales data" insufficient to

6   support scienter); *Zucco*, 552 F.3d at 1000 (finding insufficient "allegations that senior

7   management . . . closely reviewed the accounting numbers generated . . . each quarter [], and that

8   top executives had several meetings in which they discussed quarterly inventory numbers").

9          Additionally, Plaintiffs still do not allege that Ms. Bharadwaj was monitoring metrics or

10  had any information on September 14, 2022, contradicting her statements.  At most, Plaintiffs

11  reference an internal project to engage with large customers around Labor Day 2022.  ¶ 80.  But

12  Plaintiffs do not tie that project ("Big Fish") to any challenged statement, nor does it undermine

13  Defendants' November 3, 2022 disclosure that the Existing Paid User Expansion slowdown

14  began in the second half of August.  Absent allegations establishing that each Defendant had

15  information directly contradicting his or her statements at the time they were made, Plaintiffs

16  cannot establish scienter.  *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035-36 (9th

17  Cir. 2002) (rejecting scienter allegations based on conclusory statements about management's

18  access to supposed "negative internal reports" about customer demand without particularized

19  allegations of specific information contradicting defendants' public statements); *Wet Seal*, 518 F.

20  Supp. 2d at 1175 (rejecting scienter allegations based on management access to real-time reports

21  because, as here, "Plaintiffs have not alleged any specific data that the individual Defendants

22  learned from these reports that were inconsistent with [the company's] public statements").

23          <u>Defendants' November 2022 Disclosures Do Not Support Scienter.</u>  Plaintiffs continue to

24  claim Defendants "admitted" in November that material trends were known in July 2022, ¶ 125,

25  but even accepting the Second Amended Complaint's conclusory allegations as true, Defendants

26  did no such thing.  *See supra* Section IV.A.  As the Court previously noted, Defendants disclosed

27  on November 3, 2022 that Free-to-Paid Conversion slowdowns had grown "more pronounced"

28  through the first quarter of fiscal year 2023, and Atlassian *started* to see a slowdown in Existing

1    Paid User Expansion in **the second half** of the first quarter.  Dismissal Order at 11-12; Ex. F at 2,

2    11.  This timeline was recognized by analysts.  Ex. G at 11-12.  This disclosure in no way

3    "admitted" that material trends in Free-to-Paid Conversions and Existing Paid User Expansion

4    were known in July 2022 or at the time of any challenged statement.  Plaintiffs cannot take

5    Atlassian's periodic reporting, which is exactly what the securities laws call for, and frame it as

6    an "admission" of fraud.

7         <u>Atlassian's Historical Sales Cycle Does Not Support Scienter</u>.  Plaintiffs claim

8    Atlassian's historically "linear" sales cycle meant Defendants must have been "immediately

9    aware of negative trends in the business." ¶ 128.  That claim is pure speculation unsupported by

10   any particularized fact establishing that Defendants knew of any deviation from the historical

11   sales cycle at least at the time of the challenged statements in early August.  Dismissal Order at

12   12.  On the contrary, Defendants warned investors in August 2022 that the sales cycle could

13   become more seasonal, negating any inference that a newly observed slowdown beginning in

14   mid-August 2022 would have spelled doom to Atlassian.  *Id.* at 24 ("[Plaintiffs] do not allege . . .

15   that any defendant intentionally or recklessly withheld information that the linear sales cycle had

16   changed to one with more seasonality . . . [n]or could they . . . the August 4 earnings call shows

17   that the defendants warned the public that their sales would likely experience seasonality.").

18   Defendants promptly disclosed macroeconomic impacts in the first earnings announcement after

19   their onset.  That is transparency, not fraud.

20        <u>Plaintiffs Cannot Rely on a "Core Operations" Theory</u>.  Plaintiffs continue to invoke a

21   catch-all, conclusory "core operations" theory of scienter based on the general allegation that

22   because "90% of [Atlassian's] revenue in any given year comes from existing customers,"

23   Defendants must have been aware of "Atlassian's core business." ¶ 132.  But pleading scienter

24   based on core operations is "not easy" and is appropriate only in "rare circumstances," such as

25   where a plaintiff alleges "witness accounts demonstrating that executives had actual involvement

26   in creating false reports." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *19 (N.D. Cal.

27   Dec. 18, 2017) (rejecting core-operations theory where defendant derived 83% of revenue from

28   one product).  Such rare circumstances are not alleged and do not exist here.  Allegations

1    "merely emphasizing the importance" of a business metric or product line to the company do

2    "not show that the core operations theory applies."  *See, e.g.*, *Pardi v. Tricida, Inc.*, 2022 WL

3    3018144, at *15 (N.D. Cal. July 29, 2022) (citing cases); *In re AnaptysBio, Inc. Sec. Litig.*, 2021

4    WL 4267413, at *14 (S.D. Cal. Sept. 20, 2021) (rejecting core operations theory based on

5    importance of company's product).

6          <u>Analyst Opinions Do Not Support Scienter</u>.  Plaintiffs again point to analyst reports

7    expressing interest in macroeconomic headwinds and later disappointment in Atlassian's reduced

8    forward-looking guidance as support for scienter.  ¶¶ 129-131.  The Court already rejected these

9    allegations because Plaintiffs "do not assert that anyone at Atlassian manipulated results or hid

10   unfavorable analyses" or that any Defendant "answered an investor's question in a way that

11   intentionally hid this misinformation."  Dismissal Order at 23-24.  Plaintiffs add nothing to cure

12   this deficiency.  The opinions of third-party analysts have nothing to do with Defendants' state of

13   mind.  *See In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *10 n.5 (N.D. Cal. Mar. 29,

14   2013) (rejecting argument that "analyst reactions" supported scienter); *Wet Seal*, 518 F. Supp. 2d

15   at 1172-73 (rejecting scienter based on reported statements made by analysts); *Campo v. Sears*

16   *Holding Corp.*, 371 F. App'x 212, 215 (2d Cir. 2010) (no scienter based on journalist opinion).

17         <u>A Purported Item 303 Violation (That Did Not Occur) Does Not Support Scienter</u>.

18   Plaintiffs claim Atlassian's alleged Item 303 violation supports scienter.  ¶ 133.  As this Court

19   already found, Plaintiffs "do not plausibly allege that the defendants failed to disclose known

20   material trends in the August 19 or October 4 reports," and thus, their attempt to "[r]efram[e] the

21   same argument as a violation of Item 303 does not save their deficient allegations."  Dismissal

22   Order at 25.  And in any event, "[t]he majority of circuits have clearly held that standing alone,

23   allegations of violations of GAAP or SEC regulations do not establish scienter."  *In re*

24   *Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005).

25                    **4.      The Non-Fraudulent Inference Is More Compelling**

26         As the Court previously found, "there is a 'plausible, nonculpable explanation' for the

27   defendant's conduct," which is that Defendants "were trying to provide open and regular

28   communications to their shareholders during uncertain economic times."  Dismissal Order at 25.

1   It is far more plausible that Defendants believed in the continued growth of their products and
2   kept investors apprised of developments as soon as they were observed and understood.  Indeed,
3   Defendants informed investors about new slowdowns in Free-to-Paid Conversions at the start of
4   the single-quarter class period, and updated investors about newly observed slowdowns in
5   Existing Paid User Expansion in announcing results for the very next quarter.  And even though
6   Atlassian *met its financial guidance* for that quarter, it transparently reset investor expectations
7   for the rest of the fiscal year based on these new observations.  Plaintiffs' manufactured
8   securities fraud claims would have every company who does not have a crystal ball to predict
9   changes intra-quarter found liable of securities fraud.  That is not the law.  And comparing the
10  non-fraudulent inference against a strong inference of scienter, "[i]t is not a 'tie' or even a 'close
11  question.'"  *Id.*; *see also In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201, at *10 (C.D. Cal. June
12  17, 2021) (no scienter where the "more plausible alternative explanation" is that defendants'
13  decision to "pull [forward-looking] fiscal year guidance" in the midst of uncertain economic
14  circumstances "is more indicative of a business responding to uncertainty"); *In re Pivotal Sec.*
15  *Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) ("honest optimism followed by
16  disappointment is not the same as lying or misleading").

17  **C.    Plaintiffs Fail to State a Section 20(a) Claim**

18  Plaintiffs do not plead a Section 10(b) claim, so their Section 20(a) claim fails.  Dismissal
19  Order at 25 n.6.

20  **V.    CONCLUSION**

21  Defendants respectfully request that the Court grant Defendants' Motion to Dismiss
22  Plaintiffs' Second Amended Complaint with prejudice.

23  Dated:  April 19, 2024                          Respectfully submitted,

24                                                  LATHAM & WATKINS LLP

25                                                  By /s/ *Michele D. Johnson*
26                                                     Michele D. Johnson (SBN 198298)
                                                       650 Town Center Drive, 20th Floor
27                                                     Costa Mesa, California 92626
                                                       Telephone:  1.714.540.1235
28                                                     Email:  michele.johnson@lw.com

Colleen C. Smith (SBN 231216)
12670 High Bluff Drive
San Diego, California 92130
Telephone:  1.858.523.5400
Email:  colleen.smith@lw.com

Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  1.202.637.2200
Email:  susan.engel@lw.com

Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California 94025
Telephone:  1.650.328.4600
Email:  daniel.gherardi@lw.com

*Attorneys for Defendants*