LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: 1.714.540.1235
Email: michele.johnson@lw.com

Colleen C. Smith (SBN 231216)
12670 High Bluff Drive
San Diego, California 92130
Telephone: 1.858.523.5400
Email: colleen.smith@lw.com

Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 1.202.637.2200
Email: susan.engel@lw.com

Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California 94025
Telephone: 1.650.328.4600
Email: daniel.gherardi@lw.com

*Attorneys for Defendants Atlassian Corporation, Atlassian Corporation Plc, Michael Cannon-Brookes, Scott Farquhar, Anu Bharadwaj, and Cameron Deatsch*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATLASSIAN CORPORATION, ATLASSIAN CORPORATION PLC, MICHAEL CANNON-BROOKES, SCOTT FARQUHAR, ANU BHARADWAJ, and CAMERON DEATSCH,<br><br>Defendants. | CASE NO. 3:23-cv-00519-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date: August 7, 2024<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick, III |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Plaintiffs' Allegations Do Not Establish That Ms. Bharadwaj Made a Material Misrepresentation With Scienter on September 14, 2022 .................... 2

        1. Ms. Bharadwaj's Statements Were Not Materially False or Misleading ................................................................................................ 2

        2. Plaintiffs Still Fail to Allege Facts Establishing Ms. Bharadwaj's Scienter ................................................................................ 7

    B. Plaintiffs' Allegations Do Not Establish Falsity or Scienter for the Remaining Challenged Statements ................................................................. 13

        1. The Remaining Challenged Statements Were Not False or Misleading ............................................................................................... 13

        2. Plaintiffs Still Fail to Allege Facts Establishing Scienter for Messrs. Deatsch, Cannon-Brookes, and Farquhar ................................. 15

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Azar v. Yelp, Inc.*,
  2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .................................................................. 11

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................................................ 3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .......................................................................................... 11

*City of Dearborn Heights Act 345 Police & Fire Ret. System v. Align Tech., Inc.*,
  2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) .................................................................. 14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  527 F. Supp. 3d 1151 (N.D. Cal. 2021) ............................................................................ 8

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................................................................. 5

*Diaz v. N. Dynasty Minerals Ltd.*,
  2019 WL 1873291 (C.D. Cal. Feb. 22, 2019) ................................................................. 10

*Espy v. J2 Glob., Inc.*,
  99 F.4th 527 (9th Cir. 2024) ................................................................................ 6, 9, 10, 12

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ............................................................................................... 8

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .............................................................. 8, 11

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
  2017 WL 8791111 (C.D. Cal. Dec. 21, 2017) .................................................................. 9

*In re Autodesk, Inc. Sec. Litig.*,
  132 F. Supp. 2d 833 (N.D. Cal. 2000) ............................................................................ 10

*In re Capstone Turbine Corp. Sec. Litig.*,
  2018 WL 836274 (C.D. Cal. Feb. 9, 2018) .................................................................... 10

*In re CBT Grp. PLC Sec. Litig.*,
  2001 WL 1822729 (N.D. Cal. Dec. 28, 2001) .................................................................. 4

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) .............................................................................. 5

*In re Enovix Corp. Sec, Litig.*,
    2024 WL 349269 (N.D. Cal. Jan. 30, 2024) .................................................................. 3, 4, 10

*In re Nimble Storage, Inc.*,
    2016 WL 7209826 (N.D. Cal. Dec. 9, 2016) ............................................................................ 6

*In re Nuvelo, Inc. Sec. Litig.*,
    668 F. Supp. 2d 1217 (N.D. Cal. 2009) ................................................................................... 7

*In re Plantronics, Inc. Sec. Litig.*,
    2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) ......................................................................... 4

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020) ................................................................................. 4, 5

*LifeLine Legacy Holdings, LLC v. OZY Media, Inc.*,
    2022 WL 2119122 (N.D. Cal. June 13, 2022) ......................................................................... 8

*Loc. 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*,
    2022 WL 614235 (9th Cir. Mar. 2, 2022) .............................................................................. 12

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................................. 8, 11

*Pirani v. Netflix, Inc.*,
    2024 WL 69069 (N.D. Cal. Jan. 5, 2024) ..................................................................... 3, 6, 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    2012 WL 1868874 (N.D. Cal. May 22, 2012) ....................................................................... 14

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................................................. 8

*Smith v. NetApp, Inc.*,
    2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ......................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................................... 6

## I. INTRODUCTION

The Opposition confirms that Plaintiffs' theory of fraud is inconsistent with the actual statements Plaintiffs challenge and is not supported by any particularized facts.[1] Instead, Plaintiffs rely almost exclusively on one low-level former employee (CW3) and his vague and conflicting references to Atlassian's growth rate and internal initiatives. But Plaintiffs still do not identify any particularized fact rendering any challenged statement false or misleading when made, and they do not allege any particularized fact supporting a strong inference that Defendants made the challenged statements with an intent to deceive investors. Indeed, Plaintiffs still cannot explain why Defendants would purportedly lie to investors in September 2022 knowing the "truth" would be revealed in early November 2022 without any attempt to profit on that supposed scheme. The complaint should be dismissed again, this time with prejudice.

Plaintiffs focus their Opposition on Ms. Bharadwaj's comments at a September 14, 2022 investor conference. Plaintiffs argue Ms. Bharadwaj misled investors by not disclosing a material adverse trend in Existing Paid User Expansion and instead representing there was no such trend. That is wrong. She methodically discussed various business metrics, calling each by name. When she spoke about Existing Paid User Expansion, rather than represent that there had been no adverse trends, she warned investors to continue to monitor the metric given the macroeconomic environment. That warning stood in stark contrast to the other metrics she discussed, and no reasonable investor would have taken her warning to mean there were no concerns with Existing Paid User Expansion. In any event, Plaintiffs allege no facts showing *a material* slowdown in Existing Paid User Expansion by the time of the September 14 statements. Plaintiffs never allege anything about the *magnitude* of any slowdown, and the fact that Atlassian *met* guidance for Q1 2023 belies Plaintiffs' argument that any slowdown in Existing Paid User Expansion (which accounts for 90% of revenue) must have been material two months into the quarter.

Plaintiffs fare no better on scienter. Their theory that Ms. Bharadwaj was attempting to deceive investors by hiding a slowdown in the metric is implausible given her express warning to investors to keep an eye on it. And Plaintiffs again fail to point to any financial motivation for

---

[1] Capitalized terms have the meaning ascribed in the Motion to Dismiss ("Mot.," Dkt. No. 61).

Ms. Bharadwaj to lie, which this Court already found doomed Plaintiffs' claim. Dismissal Order at 22-23. And their reliance on CW3 fares no better on scienter because he never alleges when or what Ms. Bharadwaj knew about Existing Paid User Expansion at the time of her statements.

## II. ARGUMENT

### A. Plaintiffs' Allegations Do Not Establish That Ms. Bharadwaj Made a Material Misrepresentation With Scienter on September 14, 2022

Plaintiffs still have not adequately alleged any particularized fact suggesting that Ms. Bharadwaj's statement was false or misleading. Plaintiffs' Opposition relies on conclusory assertions from CW3 about an internal project to find ways to increase user expansion through product enhancements and new features, Opp. at 13, but neither is sufficient to allege that Ms. Bharadwaj made a material misrepresentation with an intent to deceive investors. Ms. Bharadwaj cautioned investors that Atlassian was monitoring Existing Paid User Expansion and that investors should too, given the macroeconomic climate. Plaintiffs' argument ignores that warning. Even apart from the warning, Plaintiffs do not point to a single fact showing a *material* decline in Existing Paid User Expansion at the time of Ms. Bharadwaj's statements. Plaintiffs never allege the magnitude of any purported slowdown in Existing Paid User Expansion at that time—instead relying on statements in November 2022 based on the completed quarter and a change in *go-forward* guidance. Plaintiffs also have no meaningful response to the absence of any factual allegations suggesting Ms. Bharadwaj had any motive to mislead investors knowing the purported "truth" would be revealed less than two months later. Plaintiffs do not allege Ms. Bharadwaj sold stock or otherwise tried to profit in the weeks between her purportedly fraudulent statement and the alleged corrective disclosure. Plaintiffs' scienter allegations are also implausible given that instead of *concealing* some negative information, Ms. Bhardwaj *specifically cautioned* investors to pay close attention to the metric. The law requires more. *See* Dismissal Order at 4.

### 1. Ms. Bharadwaj's Statements Were Not Materially False or Misleading

On September 14, 2022, Ms. Bharadwaj spoke at an informal investor conference. Mot. at 15-17. First she discussed free users, reiterating the previously disclosed Free-to-Paid Conversion slowdown. ¶ 67. Then she noted that "the number of free users that are coming in that create new

free instances continues to grow steadily. We're not seeing any trends **there**." *Id.* She summed up: "So across the board, across existing and new [free users], that's overall what we are seeing in different parts of the business." *Id.* Second, she spoke about upselling subscription levels and noted "I haven't really seen any discernible trend **there** in terms of the macroeconomic impact." ¶ 68. Third, she spoke about "user expansion," and she specifically did *not* disclaim the existence of any trend or any slowdown; instead she cautioned investors, "[t]hat's an area that we continue to monitor . . . but that's going to be an important one to look at in the current climate." *Id.*

Plaintiffs argue that these statements were misleading because: (1) she allegedly downplayed the significance of a slowdown in Free-to-Paid Conversions, and (2) she did not disclose a slowdown in Existing Paid User Expansion. Opp. at 20-22. As to Free-to-Paid Conversions, the Court has already held, "defendants told the market about the Free to Paid slowdown in August," and "Bharadwaj's statements in September convey essentially the same information." Dismissal Order at 18. Nothing in the SAC changes that holding.

The Second Amended Complaint, however, does support changing the Court's prior holding as to whether Ms. Bharadwaj misled investors about a slowdown in Existing Paid User Expansion. *See* Mot. at 8-9; *Pirani v. Netflix, Inc.*, 2024 WL 69069, at *8 (N.D. Cal. Jan. 5, 2024). Ms. Bharadwaj did not "provide[] no commentary on the Paid User Expansion." Dismissal Order at 18. Nor did she, as Plaintiffs continue to conflate, suggest that she was conveying "all news" across the board. Instead, she walked through several key metrics, telling investors about what Atlassian was seeing in Free-to-Paid Conversions, new free users, and subscription upgrades, and then when speaking about Existing Paid User Expansion, instead of like the other metrics, Ms. Bharadwaj did not speak to the existence of any discernible trend. Instead, she flagged that it was a metric Atlassian would continue to monitor. Plaintiffs misleadingly excerpt snippets, but the full context shows that Ms. Bharadwaj walked through one metric at a time—and declined to say whether she discerned any trend in Existing Paid User Expansion. Her statements "neither stated nor implied anything regarding" the state of Existing Paid User Expansion at the time, one way or the other. *In re Enovix Corp. Sec, Litig.*, 2024 WL 349269, at *12 (N.D. Cal. Jan. 30, 2024); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (affirming dismissal where

company "neither stated nor implied anything" about alleged omitted fact). Instead, she warned that Atlassian was continuing to monitor Existing Paid User Expansion and investors should keep an eye on it. That is the opposite of fraud. Plaintiffs "essentially argue for a completeness rule," but that "is not what the PSLRA requires." *Enovix*, 2024 WL 349269, at *12.

Even if there were a completeness rule, Plaintiffs' argument still fails because they allege no facts showing there was a *material* adverse trend in Existing Paid User Expansion as of September 14, 2022. Plaintiffs claim that materiality is off-limits at the pleadings stage, Opp. at 20, but that is not true where the Second Amended Complaint "lacks any plausible allegation that [Existing Paid User Expansion] was *materially declining* or that [Ms. Bharadwaj] knew as much at the time of [her] September [1]4 statements." *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 885 (N.D. Cal. 2020) (emphasis added). And the allegations on which Plaintiffs rely to claim a material slowdown show no such thing.

*First*, Plaintiffs again argue that Existing Paid User Expansion began to slow in June 2022. Opp. at 20-21. That is wrong. The Court has already held that the slowdown in Existing Paid User Expansion began, at the earliest, in mid-August 2022. Dismissal Order at 11-12. But the *timing* of when the slowdown began also says nothing about the *magnitude* of any slowdown. So this argument cannot support materiality.

*Second*, Plaintiffs rely on an alleged internal project (Project Big Fish) CW3 erroneously claims was implemented in September 2022 to "brainstorm and stress-test product features" to "entice additional users," ¶¶ 79-80; Opp. at 8, as supposed evidence of the "gravity" of a slowdown.[2] Opp. at 20-21. But Plaintiffs' allegations about Project Big Fish are entirely devoid

---

[2] Contrary to the projects referenced in Plaintiffs' cited cases, Project Big Fish is alleged only to be a brainstorming exercise to find product enhancements that might entice users. Opp. at 8; ¶¶ 79-80. In *In re Plantronics, Inc. Securities Litigation* (Opp. at 21), the project at issue was an internal "review[] [of] sales activities"—after "concerns about channel partners carrying too much inventory"—which ultimately concluded that "channel stuffing was occurring at the Company." *See* 2022 WL 3653333, at *2 (N.D. Cal. Aug. 17, 2022). The internal investigation in *Plantronics* bears no resemblance to Project Big Fish, which is alleged only to have been a sales brainstorming project aimed at Atlassian continuing to grow its business by collaborating with large customers. And in *In re CBT Group PLC Securities Litigation* (Opp. at 21), the court held that the creation of a task force to address revenue issues could not "be reconciled" with statements made by defendants "regarding growth, the revenue model, and competition." *See* 2001 WL 1822729, at *5 (N.D. Cal. Dec. 28, 2001). But Plaintiffs, here, do not allege any particularized fact connecting

of detail and do not explain how the project relates to the materiality of any supposed slowdown. Plaintiffs (and CW3) do not allege how long the project lasted, that Defendants participated in the project, or that the project had any results related to Existing Paid User Expansion. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019) (rejecting allegations that "lack in particularity"); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 870 (N.D. Cal. 2004) (rejecting allegations where plaintiff failed to "include many critical details" including where internal reports were written or read and by whom). Worse still, Plaintiffs allege no fact suggesting Ms. Bharadwaj (or anyone at Atlassian) understood the magnitude of the new Existing Paid User Expansion slowdown (or its cause) within just days of its onset. *Twitter*, 506 F. Supp. 3d at 885-86 (rejecting claim that "defendants would have been able to determine accurately the true amount of the decline . . . based on a single month of data"), *aff'd* 29 F.4th 611 (9th Cir. 2022).[3] On the contrary, assuming the Project Big Fish allegations are true, Atlassian apparently believed it could stop or reverse that slowdown. That is consistent with Ms. Bharadwaj warning investors to monitor the metric. Contrary to Plaintiffs' misrepresentation of snippets of Ms. Bharadwaj's statement out of context, she did not "convey[] all news" and discuss all "discernible trends in Atlassian's business," Opp. at 22, she detailed what Atlassian was seeing in various metrics, but responsibly declined to speak about any purported trend (one way or the other) in Existing Paid User Expansion because any such representation would have been "merely speculative." *Twitter*, 506 F. Supp. 3d at 885-86.

Plaintiffs' allegations regarding Project Big Fish are also unavailing because they are sourced entirely from CW3 who is not reliable. CW3 claims that "Defendants were personally involved in meetings" in July 2022 "where they designed and implemented Project Big Fish."

---

an internal project to collaborate with certain customers to Ms. Bharadwaj's statement that Existing Paid User Expansion was an important metric to watch.

[3] Plaintiffs seek to distinguish *Twitter* because "the allegations neither showed that the slowdown began months prior, nor that the trend significantly veered from historical norms." Opp. at 21 n.9. But Plaintiffs have not shown a months-long slowdown (nor could they given Atlassian *met its revenue guidance* for Q1 23), nor have they shown the magnitude of the new slowdown in Existing Paid User Expansion such that it "significantly veered from historical norms." Instead, just like in *Twitter*, the alleged slowdown began "only four weeks before the September [] statements," and it is not "plausible that defendants would have been able to determine accurately," the true nature of the slowdown based on that limited timeframe. 506 F. Supp. 3d at 885-86.

Opp. at 20-21. But CW3 does not claim to have been at the supposed meetings or to have ever interacted with any Defendant in connection with those meetings. *See* ¶¶ 79-80. Indeed, CW3 only (falsely) claims to have become aware of Project Big Fish in September 2022. ¶ 80. And Plaintiffs still allege no particularized facts to establish CW3 (an employee at least three steps removed from any executive and working in just one of Atlassian's divisions) was in a position to have detailed knowledge of Atlassian's *company-wide* metrics and be responsible for "assessing the overall health of the business," ¶ 73, (especially considering that he only joined Atlassian in June 2022 just one month before the relevant quarter).[4] *See* Mot. at 12; *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 536 (9th Cir. 2024) (holding that confidential witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (rejecting claims where CW "had no firsthand knowledge of the workings of" departments in which he did not work).

*Third*, CW3's vague allegation that when he joined Atlassian in June 2022, Atlassian was "not growing like gangbusters" and "it was slower than expected," ¶ 74, does not include particularized facts about the magnitude of any supposed Existing Paid User Expansion slowdown, much less when the slowdown became material. *See In re Nimble Storage, Inc.*, 2016 WL 7209826, at *10 (N.D. Cal. Dec. 9, 2016) (rejecting "conclusory" CW allegations that did not "provide any facts or details"); *Netflix,* 2024 WL 69069, at *9 (CW's "vagueness around timing" is insufficient because CW "fails to state with particularity facts giving rise to a reasonable inference" challenged statements "were false or misleading when made"). CW3's claim that Atlassian "was only growing at a rate of 30% for the year" instead of targeted growth of "50% year-over-year" in "July and August 2022" is also unavailing. Opp. at 21; ¶ 77. CW3 mixes apples and oranges. Mot. at 11. Plaintiffs concede Atlassian predicted (*and delivered*) approximately 50% year-over-year growth in *Cloud* revenue. ¶¶ 72, 77; Ex. C at 14; Ex. F at 13. And Atlassian consistently generated *overall* revenue growth in the 30% range. Ex. C at 12. In their Opposition, Plaintiffs argue that CW3's "entire statement was exclusively about cloud

---

[4] Plaintiffs' conclusory assertion that a program manager (CW4) and executive recruiter (CW5) would "naturally" know of company-wide metrics, Opp. at 15 n.3, is unsupported by any particularized allegation of fact. Mot. at 7, 10-12 & n.3.

growth" and that it is "irrelevant" that "Atlassian reported 49% cloud growth for Q1 2023" because CW3 was speaking of yearly growth.[5] Opp. at 15 n.4. But CW3 *never* claims to only be speaking about Cloud revenue, *see, e.g.*, ¶ 77, and Plaintiffs allege no particularized fact suggesting a low-level employee in a single Atlassian division could have known Atlassian's *yearly* growth just two months into the fiscal year. Plaintiffs cannot state a securities fraud claim by pointing to a CW who intentionally muddles Atlassian's growth metrics, particularly by dismissing that Atlassian *met its forecasted quarterly revenue guidance* as "irrelevant." CW3's claims about overall revenue growth are not tied to any alleged material adverse trend in Existing Paid User Expansion.

*Finally*, far from a "material" concern, Plaintiffs still have no legitimate response to the fact that Atlassian *met its quarterly revenue guidance*. Mot. at 5. That is, instead of a material adverse impact from a new slowdown in Existing Paid User Expansion necessitating Project Big Fish, Atlassian hit the very goals it shared with investors. All that Atlassian announced in Plaintiffs' purported "corrective disclosure" is that *assuming* the slowdown that began in the second half of Q1 2023 continued for the rest of the fiscal year, Atlassian's *go-forward* guidance would be reduced. Ex. F at 15. Plaintiffs cannot allege a material misrepresentation in September 2022 based on a new project that was supposedly initiated 11 days before Ms. Bharadwaj's statements based on a revision to go-forward guidance based on an assumption about the future.

### 2.  Plaintiffs Still Fail to Allege Facts Establishing Ms. Bharadwaj's Scienter

Plaintiffs concede that they cannot plead a motive for Ms. Bharadwaj's purported fraud. Opp. at 19-20. Ms. Bharadwaj did not sell stock or otherwise attempt to profit from her supposed scheme to mislead investors in September 2022 before the "truth" would be disclosed in November 2022. Plaintiffs have no response to the numerous cases rejecting scienter allegations that do not suggest why defendants would "affirmatively omit the full picture about the status of the company when talking to investors and analysts, and instead reveal the details eight weeks later" without

---

[5] Plaintiffs assert in a footnote of the Opposition that Atlassian's Cloud revenue grew 30% in fiscal year 2023, Opp. at 15 n.4, but that fact is *nowhere* in the SAC and, in any event, Plaintiffs cannot plead fraud by hindsight using financial results from a year after the relevant quarter. *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1230 (N.D. Cal. 2009) ("the fact that a prediction proves to be wrong in hindsight does not render the statement untrue when made").

seeking to benefit from that omission.[6] Dismissal Order at 23; Mot. at 19-20; *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415-16 (9th Cir. 2020) (rejecting scienter theory without motive allegations because it "does not resonate in common experience" for defendants to not seek to profit from inflated stock prices before "fac[ing] the inevitable fallout"). This lack of motive "makes it much less likely [Plaintiffs] can show a strong inference of scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021); *LifeLine Legacy Holdings, LLC v. OZY Media, Inc.*, 2022 WL 2119122, at *4 (N.D. Cal. June 13, 2022) ("In the Ninth Circuit, allegation of a plausible motive generally is required to plead scienter.").[7]

Without any suggestion Ms. Bharadwaj intended to deceive investors, Plaintiffs argue her scienter is shown through (1) Project Big Fish, (2) CW allegations that she received internal reports, (3) Mr. Deatsch's November 2022 statements about future guidance, (4) historically linear sales cycle, (5) core operations, and (6) analyst reactions to Atlassian's future guidance. Opp. at 11-18. Plaintiffs have not alleged any fact suggesting Ms. Bharadwaj (or any Defendant) made any challenged statement with an intent to deceive investors, not least because there is no allegation

---

[6] Plaintiffs' argument that Defendants wanted to "buy themselves time" in order to announce Project Big Fish, Opp. at 19; ¶ 82, is devoid of any fact suggesting Atlassian made any such later announcement. Plaintiffs' theory can only be that Defendants knew of a slowdown that would affect *future* revenues as of September 2022, but supposedly bought themselves time just to announce that information a few weeks later without any mitigating announcement. *See* ¶ 82. Plaintiffs cannot now try to side-step their allegations that Ms. Bharadwaj purportedly knew Atlassian would have to "walk back its prior guidance," ¶ 82, in an attempt to hide their failure to allege any plausible motive. Opp. at 19. That Atlassian never announced a project to reverse the purported slowdown renders Plaintiffs' cited cases inapposite. Opp. at 19 (citing *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 697 (9th Cir. 2021) (defendants delayed corrective disclosure to allow regulatory scrutiny of similar issues to die down); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1163 (N.D. Cal. 2021) (defendants delayed corrective disclosure in order to mitigate losses through coercive sales practices)).

[7] Plaintiffs' citation to *In re Apple Inc. Securities Litigation* is inapposite. Opp. at 19. There, the court held that the lack of pecuniary motive was not dispositive of scienter where plaintiffs alleged particularized facts showing that Apple's CEO was aware of material impacts on Apple's business in China when he made specific affirmative representations that there were no such impacts. *Apple*, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020). Notably, the court in *Apple* was persuaded that the facts demonstrated the $9 billion quarterly shortfall was gradual in October and November, but already "particularly bad" by the time of the challenged statement in November, and did not precipitously drop in the last month of the quarter. *Id.* at *10, *13. Here, by contrast, Atlassian disclosed that it only began observing a slowdown in Existing Paid User Expansion in the second half of Q1 2023 (at most a few weeks before Ms. Bharadwaj's statements), but Plaintiffs allege no facts suggesting the slowdown was "particularly bad" such that Defendants must have known it was a material adverse trend undermining any challenged statement. Indeed, Atlassian *met its revenue guidance* for the quarter.

showing Ms. Bharadwaj knew at the time of her statement about the *magnitude* of any decline in Existing Paid User Expansion, let alone that it was continuing or material.  Plaintiffs ignore the innocent explanation for Ms. Bharadwaj's statement—that even if Existing Paid User Expansion had been slowing down for a few weeks, she declined to speculate about its magnitude or direction (none of which she is alleged to have known or, as to direction, could have known) and instead flagged for investors that they should keep an eye on it—is far more plausible.  Mot. at 18-25.

***Plaintiffs Do Not Tie Ms. Bharadwaj to Project Big Fish.***  Plaintiffs cite CW3 to allege Ms. Bharadwaj was "intimately involved" in Project Big Fish.  Opp. at 12-13.  But nothing CW3 alleges suggests any direct involvement in or knowledge of Project Big Fish by Ms. Bharadwaj. *See Espy*, 99 F.4th at 536-37 (rejecting CW allegations of scienter where CWs were not in a position to speak of executives' knowledge or incentives).  Other than generally alleging that Project Big Fish "came from the executive team," CW3 claims that Ms. Bharadwaj was "very involved" in the project "because she had 40 people in product strategy that reported to her involved with this project."  ¶ 81; Opp. at 12.  Ms. Bharadwaj was Atlassian's then-COO with hundreds of employees reporting to her.  Plaintiffs do not tie employees generally reporting to Ms. Bharadwaj to any particularized fact regarding Project Big Fish or its results.  And Plaintiffs do not allege CW3 ever spoke to any Atlassian executive (including Ms. Bharadwaj) about Project Big Fish, much less about its supposed origins, purposes, or results.  *Espy*, 99 F.4th at 537 (rejecting CW allegations of executives' knowledge even where CW attended meeting with executives but did not allege facts tying conversation to purported misstatement); *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 8791111, at *6 (C.D. Cal. Dec. 21, 2017) (no scienter where plaintiff failed to "allege facts demonstrating that Defendant knew" of contradictory information).

***Plaintiffs Do Not Identify What Information Ms. Bharadwaj Allegedly Knew.***  Plaintiffs also argue (based primarily on CW3's allegations) that Ms. Bharadwaj was aware of "information at odds with her statements" because "metrics [] were presented to [her]" and discussed "at weekly and monthly meetings."  Opp. at 14.  But these vague allegations fail to "state with specificity what [Ms. Bharadwaj] knew and when": Plaintiffs allege nothing to suggest she knew or believed there was a "discernible" adverse trend in Existing Paid User Expansion, let alone any facts

showing the magnitude of any such "trend" such that it could have been considered material. *See Enovix*, 2024 WL 349269, at *15; *see also Espy*, 99 F.4th at 537 (rejecting CW reporting secondhand information about what executive did or knew).[8] Generally alleging Ms. Bharadwaj attended meetings where "metrics" were discussed says nothing at all about the specific information conveyed to Ms. Bharadwaj, the materiality of that information, or whether it undermined any statement she made in September 2022. *See* Mot. at 20-21; *Netflix*, 2024 WL 69069, at *9 (rejecting CW allegations that "fail[ed] to describe with particularity what was said . . . and who said it" at supposed internal meetings); *Diaz v. N. Dynasty Minerals Ltd.*, 2019 WL 1873291, at *5 (C.D. Cal. Feb. 22, 2019) (holding plaintiffs "must allege at least some specifics from [internal] reports as well as such facts as may indicate their reliability" to adequately allege scienter); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (similar).

***November 2022 Disclosures Do Not Support an Inference of Scienter.*** Plaintiffs continue to assert without any basis that Mr. Deatsch "admitted" in November 2022 that Existing Paid User Expansion was slowing beginning in June 2022. Opp. at 14-17, 21. The Court has already rejected this erroneous claim. Dismissal Order at 11-12. Nothing in Mr. Deatsch's statement disclosing that Existing Paid User Expansion began to slow in the second half of Q1 2023, *id.* at 12, constitutes an "admission" that the slowdown was a "discernible trend," or that Ms. Bharadwaj (or any Defendant) was aware of it, at any time, much less as of September 2022. Plaintiffs' cited cases where defendants made subsequent disclosures that arguably conflicted with earlier statements are therefore inapposite. Opp. at 17. For example, in *Apple*, Tim Cook affirmatively stated on November 1, 2018 that Apple was not "seeing pressure" in Chinese markets, but later admitted Apple saw a contraction in the Chinese economy "as the quarter went on," including that

---

[8] Plaintiffs' citation to *In re Capstone Turbine Corporation Securities Litigation* (Opp. at 15-16) is inapposite. There, the court credited allegations from a CW about a "downsized" order because the CW was an order manager, specifically alleged to have been tasked with managing order backlog and updating orders based on delays. 2018 WL 836274, at *9 (C.D. Cal. Feb. 9, 2018). The court held that the timing and size of the downsized order did not undermine that the CW "has the personal knowledge to credibly assert that the downsize occurred." *Id.* Plaintiffs, here, allege no particularized facts suggesting that CW3 would be in a position to know about overall company-wide revenue trends, or that CW3 would be in a position to know what Ms. Bharadwaj knew about any specific metric at any point in time. Putting aside their failure to allege "hard numbers," Plaintiffs do not allege any numbers, "data or other detail" CW3 knew about Existing Paid User Expansion, much less with whom he shared those details.

October was "particularly bad" and he did not have December numbers. 2020 WL 6482014, at *6. The court held Mr. Cook's later statement admitted that Apple was aware of a significant ($9 billion) effect from Chinese markets in October 2020. *Id.* Here, by contrast, Mr. Deatsch said the slowdown was *first observed* in the second half of Q1 2023. He did not say anything about the magnitude of the slowdown or, as Mr. Cook did, that it was "particularly bad" before Ms. Bharadwaj made her challenged statement. To the contrary, Mr. Deatsch spoke in connection with announcing that Atlassian *met its revenue results* for that same quarter—which only suggests that the slowdown was *not* particularly bad in that quarter. Also Ms. Bharadwaj also expressly did *not* make any *affirmative* statement that Existing Paid User Expansion had not slowed down—that too stands in contrast to Mr. Cook's statement that Apple was not "seeing pressure."[9]

To the extent Plaintiffs mention the "close timing" between the purported corrective disclosure and Ms. Bharadwaj's September 2022 statements, Opp. at 18, Plaintiffs cannot manufacture a fraud claim just by alleging a short class period. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (rejecting scienter allegations based on timing between misstatements and corrections); *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *6 (N.D. Cal. Feb. 1, 2021) (time between misstatements and correction insufficient for scienter, including because complaint cited intervening events due to macroeconomic concerns). Indeed, the opposite is true: the single-quarter class period negates an inference of fraudulent intent, and instead supports that Atlassian updated investors about the *go-forward* potential impact from macroeconomic pressures as soon as that impact was reasonably foreseeable. *See Nguyen*, 962 F.3d at 415 (rejecting scienter theory that "depends on the supposition that defendants would rather keep the stock price high for a time and then face the inevitable fallout" shortly after when the market learned what defendants allegedly knew).

**Historical "Linear" Sales Cycle Does Not Support a Strong Inference of Scienter.**
Despite the fact that in early August 2022, "[D]efendants warned the public that their sales would

---

[9] Plaintiffs' reliance on *Azar v. Yelp, Inc.* fails for similar reasons. In *Yelp,* defendants originally attributed a "modest slowdown" to "the election" and "vacation time," but later admitted the slowdown was caused by advertiser retention issues that it had begun addressing before the challenged statement. 2018 WL 6182756, at *10, *17 (N.D. Cal. Nov. 27, 2018). Plaintiffs have identified no similar admission in Mr. Deatsch's statements.

likely experience seasonality," Dismissal Order at 24; *see also* Ex. A at 10-12 (warning that "quarterly financial results may fluctuate as a result of a variety of factors" including "current economic uncertainty"), Plaintiffs continue to argue that Atlassian's deviation from its historical "linear" sales cycle supports Ms. Bharadwaj's scienter, Opp. at 17.  Plaintiffs argue Defendants' warnings were limited to "migrations of on-premises clients to cloud clients" *id.*, but the warning contained no such limitation.  Ex. A at 10-11; Ex. B at 8.  And in any event, Plaintiffs do not allege with particularity *what* variability Atlassian was seeing at any point of time during the class period, much less the *magnitude* of that variability, such that Defendants (and Ms. Bharadwaj in particular) would be aware of a material adverse trend undermining any challenged statement.

***Core Operations Does Not Support Inference of Scienter.***  Plaintiffs argue Existing Paid User Expansion being important to Atlassian, Ms. Bharadwaj's attendance at meetings, and Project Big Fish show Ms. Bharadwaj's scienter.  Opp. at 18.  But the "rare circumstances" in which core operations can be used to plead scienter "are not alleged and do not exist here."  Mot. at 23-24 (citing cases).  "Cases where this theory has supported a strong inference of scienter typically involve 'specific admissions from top executives that they are involved in every detail of the company,' or 'where the nature of the relevant fact is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter.'"  *Espy*, 99 F.4th at 539 (rejecting core operations even where plaintiffs alleged that defendants "signed off on every acquisition, received detailed reports, or were 'obsessed with numbers.'"); *Loc. 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*, 2022 WL 614235, at *2 (9th Cir. Mar. 2, 2022) (rejecting core operations based on importance of company's data security policy despite allegation that "data security is a core element of [defendant's] business").  Plaintiffs have not alleged Ms. Bharadwaj was intimately involved in every aspect of Atlassian's business, much less that she was aware of any specific fact or "trend" at the time of her statement just because Existing Paid User Expansion was one of Atlassian's metrics, she attended unspecified meetings, and there was an internal project to drive sales untethered to any specific participation by Ms. Bharadwaj.

***Analysts Do Not Support and Inference of Scienter.***  Plaintiffs still do not explain how or why analyst reactions in November 2022 have any bearing on Ms. Bharadwaj's state of mind

months earlier. Mot. at 24 (citing cases). The Court rejected Plaintiffs' argument (and cited case) that Ms. Bharadwaj's scienter is shown by her responses to analysts because Plaintiffs do not allege anyone "manipulated results or hid unfavorable analyses" or that Ms. Bharadwaj answered any question "in a way that intentionally hid this information." Dismissal Order at 23-34 (also rejecting argument that Ms. Bharadwaj was "consciously attempt[ing] to give positive news about Atlassian while hiding the slowdown"). And Plaintiffs do not explain how analyst surprise at brand new macroeconomic impacts relates in any way to what Defendants knew at the time of their challenged statements, particularly when Atlassian disclosed that the slowdown was new in connection with announcing that it *met* its revenue guidance but was predicting additional softness moving forward.

***The Plausible Explanation Is More Compelling.*** It makes no sense for Ms. Bharadwaj to intentionally mislead investors in September 2022 knowing the truth would be revealed in November 2022 without capitalizing on that scheme. That is not "pure conjecture" as Plaintiffs claim (Opp. at 19), but rather, the only logical conclusion to draw from the undisputed facts alleged in the SAC. Mot. at 24-25. As the Court found previously, there is "far more support for [the] inference" that "by holding Bharadwaj's call mid-quarter on top of required end-of-quarter updates, [Defendants] were trying to provide open and regular communication to their shareholders during uncertain economic times." *See* Dismissal Order at 25. This is particularly compelling considering Atlassian was clearly not running the risk of missing its revenue guidance as of September 2022 given it announced it *met* its financial guidance for the quarter. Plaintiffs' argument that Defendants' intended to defraud investors because Atlassian did not *exceed* the range it told investors it would achieve for the quarter, Opp. at 10, is unfounded and unsupported by any case law. Put simply, it is still "not a 'tie' or even a 'close question.'" Dismissal Order at 25. Plaintiffs have not met their burden to plead a strong inference of scienter. Mot. at 25.

### B. Plaintiffs' Allegations Do Not Establish Falsity or Scienter for the Remaining Challenged Statements

#### 1. The Remaining Challenged Statements Were Not False or Misleading

Despite the Court's clear rejection of their claims, Plaintiffs' continue to challenge Mr. Deatsch's August 4, 2022 statements disclosing a slowdown in Free-to-Paid Conversions and

noting there had not been any observed trend that gave Atlassian pause, Atlassian's August 19, 2022 Annual Report for the fiscal year ended June 30, 2022 noting no known material adverse trends, and the incorporation by reference of the Annual Report in an SEC filing for Atlassian's employee stock plan on October 4, 2022.  Opp. at 22-24.  Nothing in the Opposition suggests these statements were materially false or misleading when made.

*August 4, 2022.*  Plaintiffs' challenge to Mr. Deatsch's August 2022 statements hinges on their erroneous assertion that material declines in Free-to-Paid Conversions and Existing Paid User Expansion began in June 2022.  *Id*.  Plaintiffs allege no particularized fact suggesting Existing Paid User Expansion began slowing (1) before the second half of Q1 2023 (mid-August 2022), or (2) materially as of August 4.  *Supra* Section II.A.1.  Additionally, Plaintiffs continue to claim Mr. Deatsch's amorphous statements (e.g., "like a hawk," no "significant shift," demand is "strong," and "slight") were not corporate optimism simply because they came in response to analyst questions.  Opp. at 23.  But courts routinely dismiss statements as puffery when made in response to analyst questions.  *E.g., City of Dearborn Heights Act 345 Police & Fire Ret. System v. Align Tech., Inc.,* 2013 WL 6441843, at *4, *11 (N.D. Cal. Dec. 9, 2013) (dismissing statement about "strong growth" made in response to analyst question as "mere puffery"); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *14 (N.D. Cal. May 22, 2012) (similar).

*August 19, 2022.*  Plaintiffs' challenge to a statement about material trends in Atlassian's FY 2022 Annual Report fails for the same reasons as before.  Dismissal Order at 15-17; Mot. at 13-15.  Plaintiffs misleadingly assert that Defendants and the Court acknowledged that "Defendants were well aware of the material adverse trends in Expansion and Conversion before mid-August."  *See* Opp. at 23-24.  Not so.  Defendants *never* considered the slowdowns in Free-to-Paid Conversions or Existing Paid User Expansion "material adverse trends" during the relevant period.  And the Court appropriately noted that the slowdown in Existing Paid User Expansion (again, not a material adverse trend) did not begin until "August 16 at the earliest."  Dismissal Order at 11, 16.  Plaintiffs still "do not plead that any slowdown between August 16 and August 19 was a trend." *Id.* at 16.  And Plaintiffs certainly do not plead any facts to establish that Atlassian was experiencing any *material* trends in either metric at the time of the Annual Report.

Plaintiffs' argument that it is "nonsensical" to conclude the Annual Report did not address any trends that post-dated June 30, 2022, Opp. at 24, ignores "key" context. Dismissal Order at 15. The Annual Report discussed Atlassian's business and financial condition for *FY 2022*, which ended on June 30, 2022. In that vein, Atlassian disclosed it was not aware of material adverse trends "for the current fiscal year," and warned that "future risks" were "uncertain and cannot be predicted at this time" due to the changing macro-economic environment. Ex. A at 66; Dismissal Order at 16. Plaintiffs still have not identified any requirement for Defendants to discuss uncertain, unknown, or potential results in the future as part of a retrospective annual report.

**October 4, 2022.** Plaintiffs continue to rely on an inapposite regulation to claim that Atlassian was required to update its FY 2022 Annual Report when the Annual Report was incorporated by reference into Atlassian's Form S-8 on October 4, 2022. Opp. at 24. But Plaintiffs cite no language in the regulation (or any case interpreting the regulation) that required Atlassian to update its Annual Report based on its later incorporation by reference where the report "was not false or misleading when the document was made." *See* Opp. at 24; Dismissal Order at 20.

### 2. Plaintiffs Still Fail to Allege Facts Establishing Scienter for Messrs. Deatsch, Cannon-Brookes, and Farquhar

Plaintiffs raise essentially the same scienter arguments for Messrs. Deatsch, Cannon-Brookes, and Farquhar as they do for Ms. Bharadwaj. Opp. at 24-25. Those arguments fail. *See supra* Section II.A.2. The only additional argument Plaintiffs raise for Messrs. Cannon-Brookes' and Farquhar's purported scienter is to note that they sold stock during the putative class period. *See* Opp. at 25. However, Plaintiffs have no response to their own admission that these sales were "not dramatically out of line with [] Defendants' prior trading practices," which weighs against any inference of scienter. *See* ¶ 127 n.21; Dismissal Order at 22-23. And Plaintiffs similarly cannot dispute that these sales were made pursuant to non-discretionary 10b5-1 trading plans, which also negates an inference of scienter. *See* Mot. at 19.[10]

## III.  CONCLUSION

The Court should dismiss the Second Amended Complaint with prejudice.

---

[10] Plaintiffs' Section 20(a) claim fails with their Section 10(b) claim. Dismissal Order at 25 n.6.

| | | |
|---|---|---|
| 1 | Dated: July 8, 2024 | Respectfully submitted, |
| 2 | | LATHAM & WATKINS LLP |
| 3 | | By /s/ *Colleen C. Smith* |
| | | Michele D. Johnson (SBN 198298) |
| 4 | | 650 Town Center Drive, 20th Floor |
| 5 | | Costa Mesa, California 92626 |
| | | Telephone: 1.714.540.1235 |
| 6 | | Email: michele.johnson@lw.com |
| 7 | | Colleen C. Smith (SBN 231216) |
| | | 12670 High Bluff Drive |
| 8 | | San Diego, California 92130 |
| | | Telephone: 1.858.523.5400 |
| 9 | | Email: colleen.smith@lw.com |
| 10 | | Susan E. Engel (*pro hac vice*) |
| 11 | | 555 Eleventh Street, NW, Suite 1000 |
| | | Washington, D.C. 20004 |
| 12 | | Telephone: 1.202.637.2200 |
| | | Email: susan.engel@lw.com |
| 13 | | |
| 14 | | Daniel R. Gherardi (SBN 317771) |
| | | 140 Scott Drive |
| 15 | | Menlo Park, California 94025 |
| | | Telephone: 1.650.328.4600 |
| 16 | | Email: daniel.gherardi@lw.com |
| 17 | | *Attorneys for Defendants* |