**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge Presiding

CITY OF HOLLYWOOD                )
FIREFIGHTERS' PENSION FUND,      )
Individually and on Behalf of    )
All Others Similarly Situated,   )
                                 )
            Plaintiffs,          )
                                 )
  VS.                            )      **NO. 3:23-cv-00519-WHO**
                                 )
ATLASSIAN CORPORATION,           )
ATLASSIAN CORPORATION PLC,        )
MICHAEL CANNON-BROOKES, SCOTT    )
FARQUHAR, ANU BHARADWAJ, and     )
CAMERON DEATSCH,                 )
                                 )
            Defendants.          )
_____)

San Francisco, California
Wednesday, August 7, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES BY ZOOM WEBINAR:**

For Plaintiffs:
                    SAXENA WHITE P.A.
                    7777 Glades Road, Suite 300
                    Boca Raton, Florida  33434
            **BY:  LESTER R. HOOKER, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Stenographically Reported By:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Reporter

**<u>APPEARANCES BY ZOOM WEBINAR</u>**:   (CONTINUED)


For Defendants:
                        LATHAM & WATKINS LLP
                        555 Eleventh Street, N.W., Suite 1000
                        Washington, DC  20004
                 **BY:   SUSAN E. ENGEL, ATTORNEY AT LAW**

                        LATHAM & WATKINS LLP
                        140 Scott Drive
                        Menlo Park, California 94025
                 **BY:   DANIEL R. GHERARDI, ATTORNEY AT LAW**

**Wednesday - August 7, 2024**                    **2:34 p.m.**

                    **P R O C E E D I N G S**

                         **---000---**

THE CLERK:  We will get underway in case number 23-519, City of Hollywood Firefighters' Pension Fund vs. Atlassian Corporation.

Counsel, if you would please state your appearance for the record.

MR. HOOKER:  Good afternoon, Your Honor.  Lester Hooker from Saxena White on behalf of the lead plaintiffs.

MS. ENGEL:  Good afternoon.  Susan Engel from Lathom & Watkins on behalf of defendants.  And I'm here with my colleague Daniel Gherardi.

THE COURT:  Great.  Good afternoon to everybody.

So, Mr. Hooker, I'm inclined to grant the motion and give you one more shot.  And let me tell you what I think about the -- I know you tried to address the concerns that I expressed before.

It seems to me that the Confidential Witness 3 is just simply too vague to overcome the deficiencies that I already identified.  He variously said that the slowdown started in June, July, August, or September.  He didn't say what was slowing down.  His numbers didn't match the financial reports.  For example, the July/August '22 numbers increased over 2021.  He didn't join Project Big Fish until September, but he talks

about things that happened earlier than that.

So I don't think there's a plausible pleading of falsity or misrepresentation for the August 4th, August 19th, and October 4th statements.

And then the same problems exist with respect to scienter. He doesn't allege that the paid user expansion or the free-to-paid conversions were discussed at the monthly planning meetings; how he knows the metrics were discussed at Big Fish meetings that he didn't attend and how that related to paid user expansions; how he presented metrics to Ms. Bharadwaj; what her intentional or conscious misconduct was and why she would mislead the market in mid September when she knew that the truth would come out in early November.

So I think these are -- these are -- continue to be serious problems. But it may be the Confidential Witness 3 knows the answers to those things and that you chose not to put them in for reasons of brevity or whatever.

That's the way I'm looking at it. So take it on if you'd like.

**MR. HOOKER:** Okay. Thank you very much, Your Honor, for the guidance.

We certainly think that the new allegations in the SAC provide even further support for Your Honor's determination on falsity for the September statements and bridge the gap on scienter.

I'll just briefly cover what the new allegations actually set forth.  Certainly that the slowdown in paid user expansion and free-to-paid conversions were impacting the company for months prior to September 14th when defendant Bharadwaj presented at the Goldman Sachs conference.

They say that Atlassian management was keenly aware of those declining metrics.  They recognize in July and August that the metrics were coming in well below expectations.  CW3 says that they were not hitting that 50 percent year-over-year growth they publicly touted.  The internal metrics were showing growth at only 30 percent for the year so that's a significant difference between the two.

There was weekly meetings that were convened by the individual defendants and executive management to discuss those declining metrics, monthly meetings with the broader management group.  CW3 actually specifically provided slides and information for reports that were provided to the C suite including Bharadwaj and the co-CEOs.

And the very existence of Project Big Fish really supports our allegations when it comes to scienter.  It's this major remedial project.  What's notable is defendants, nowhere in their brief or in their reply, deny the existence of Project Big Fish.

They also make an important concession in their reply brief where they say that the project was designed to address

the expansion slowdown.  Their exact words were "Assuming the Project Big Fish allegations are true, Atlassian apparently believed it could stop or reverse that slowdown."

So they acknowledge that the slowdown existed during the course of the planning and implementation of Project Big Fish. Our allegations are that they were -- the project was planned over the course of meetings during July and August.  The whole point of it was to stop or reverse that slowdown.

Defendants, in their brief, they try to minimize the significance of the project.  It was a company-wide project, 100-plus employees were specifically involved in trying to reverse the downturn in those two critical metrics.

Our new allegations made clear that the senior-most officers of the company were intimately involved in the planning and execution.  Paragraph 81 goes through all of the accounts of the former employees.  It was 100 percent initiated top down.  It came from the executive team.

Again, the timing, it was rolled out at the very beginning of September before Labor Day, which was September 5th.  But it was planned over the course of many weeks in July and August. So if the individual defendants are planning such a large-scale project to -- specifically to address the declining metrics, they had to know about it, they had to recognize the significance of it.

And we cite a number of cases in our opposition where

courts have -- in this district have found that remedial projects like Project Big Fish support scienter.  The *Plantronics* case is very similar to here.  There's an ERM project, over 100 employees involved.  The court found that it supported at least deliberate recklessness.

And there the CWs, like here, reported directly to someone who reported directly to an individual defendant.  I know that's something that defendants criticize in their brief.

Another notable aspect of the new allegations in the SAC is that they're consistent with our allegations concerning defendants' admissions at the end of the class period.

On the November 3rd earnings call, an analyst noted he had to believe that defendants had a very early warning sign about the paid user growth slowdown.  And a response, defendant Deatsch had to clarify the timing of things that we saw.  He said that user growth slowdown across our customer base was seen in July and August.  He said customers were not adding more users in July and August.

That's precisely what we allege, Your Honor, that paid user expansion experienced a slowdown in July and August.  And it's consistent with what the CWs say now that they were seeing internally behind the scenes.

And again, we note a number of cases including the *Apple* and *Yelp* cases.  *Apple*, we think is very -- very much instructive and on point.  CEO Tim Cooke does a mid-quarter

interview.  He denies that there's any trends affecting iPhone sales in China.  Later on he admits a slowdown as the quarter went on.  And the court credited that admission as a I-knew-it-all-along admission, similar to what happened here.

Apple's also instructed with regard to defendants' argument that there can be no scienter because Bharadwaj had no motive to lie in September when, if she knew what Atlassian would disclose in November.

And it's wrong on a number of levels.  Falsity and scienter are measured at the time of the challenged statement.  It also assumes facts that are not in evidence.  There's nothing in the SAC that says Bharadwaj knew what the company would disclose in November or at any point in the future.

And the SAC makes clear that defendants didn't want to disclose the negative trends in their business until they had lined up -- had their ducks in a row, Project Big Fish was implemented, and that's actually consistent again with the defendants' concession in their brief that Project Big Fish was meant to stop or reverse that slowdown.

And, again, Apple involved Tim Cooke, one of the world's richest men.  There was no suspicious insider trading.  It involved iPhone sales, not globally, not even in the U.S., but China.  Apple is obviously a company with many business lines and there were no CWs in Apple.

Here paid user expansion was 90 percent of the company's

business.   The defendants were laser focused on it.   The market was laser focused on it.   And they took concrete steps in July and August to reverse the decline in that metric, which is consistent with the admissions, consistent with the CW statements.

We think that those new allegations not only bolster falsity and scienter for September, but also for the August statements that start the class period.

Again, you have defendants saying that they had yet to see any specific trend geographically or even in industry segments or in customer size that give us pause or worry to date.   We've not seen any significant shift in customer demand.   Those statements can't be reconciled with their later admission during their November earnings call where Deatsch says user growth slowdown across our customer base in July and August.

And those statements can't be reconciled with the new allegations in the SAC that firmly established by August it was a full-blown trend that defendants were actively trying to reverse.

So against that background, Your Honor, we think that the new allegations in the SAC, which we would encourage Your Honor to take a close look at, they establish that the statements were false and misleading when made and defendants fully appreciated the significance of the slowdown in expansion and free-to-paid conversions prior to the start of the class

period.

**THE COURT:**  All right.

Ms. Engel?

**MS. ENGEL:**  Thank you, Your Honor.

We don't believe that plaintiffs can replead based on Confidential Witness 3.  In part because Confidential Witness 3 is not in a position that he would have known company-wide growth metrics.  He's in what's described as the work management product division.

And we made this argument in the brief.  I just want to make sure it comes out clearly.

Exhibit C is the shareholder letter.  And at pages 4 to 5, the company walked through the three different divisions.  CW3 was in one of them.  We also know he only joined the company a few weeks before the class period begins.

So what plaintiffs are relying on is a low-level employee, depending on their inconsistent allegations, whether it's two or three levels below Ms. Bharadwaj, who comes into the company in June.  He works in one division.  And he is making allegations that, oh, there's a fire at the company.  Hold on.  Growth is slowing more than expected.

There's no basis for a new low-level employee in one division to know anything about what was going on at the company.  And plaintiffs are stuck with that allegation about the division that he works in, the couple rungs below any

individual defendants.

And they're also stuck with the fact that there was no fire. Right? The company disclosed in November that it had met revenue guidance. It also disclosed in November again that the user expansion had started to slow in mid August. That's the disclosure that plaintiffs are pointing to as causing their losses. So they are stuck with the slowdown, as Your Honor already ruled, beginning in mid August.

So CW3's vague allegations about, oh, did it slow in June and July and August, they're lacking detail. They're also implausible given the truth that came out on November 3rd that the slowdown began in mid August. And plaintiffs are stuck with that.

I also think it's important to just step back and look at the statements that they're challenging. The *Apple* case involved a statement that was alleged to be inaccurate, right? This -- the Court recognized that that type of falsity case is not relevant to plead this burden showing of scienter here.

And the Supreme Court also recognized this in *Tellalabs* where their theory of falsity is really not one of falsity but of ambiguity or omission. The burden of showing scienter is that much higher.

And the statement that Ms. Bharadwaj made, we think read in the whole context. And I would point Your Honor to Exhibit D which has the full transcript from her September 14th

statement.  And I know Your Honor found the last time that the statement was misleading.

It is excerpted differently and some words are left out in paragraph 68 of the complaint.  I think the full statement makes clear that she did affirmatively speak to user expansion, and she didn't say anything positive.  What she says was we have to continue to watch it.

So -- and where did she say this?  This was effectively a fireside chat at a conference between a female research analyst at Goldman Sachs who noted that Ms. Bharadwaj was one of the only senior female executives in the software industry.  And they had a back-and-forth where Ms. Bharadwaj gave unscripted answers.

Plaintiffs want to hold her to a level of precision that, if that were the standard for falsity, executives would have to stop appearing at these conferences and they wouldn't be able to have unscripted conversations.

I think reading what she said in context and looking again at Exhibit D, and I'm at pages 9 and 10, document 61-6, she says we have 90 percent of our revenues.  Let me walk through the different parts of that bucket.

And she walks through three parts.  She first speaks to migrations, and she says we don't see anything there.  She then speaks, in the next paragraph, I'm at the top of page 10 in the earning call transcript.  She says, okay, we also have -- we

look at upsell or upgrades.

And then she has a paragraph discussing user expansion. And what she says is we continue to monitor it. That's going to be an important one to look at in the current climate.

She does not say, hey, there's no slowdown there. Right? And that's what plaintiffs whole theory of falsity is, that she affirmatively suggested that there was nothing wrong with user expansion. She didn't. And if -- what she said about it was, hey, red flag, we're continuing to monitor it.

Against that backdrop, that's the statement on which their falsity theory hinges. Plaintiffs' scienter burden is quite high. Right? And Your Honor dismissed on motive alone. There are no new allegations about motive except to the extent that they rely on Confidential Witness 3 who says, "I joined Project Big Fish," which is totally different from the investigation into channel stuffing that was at issue in the *Plantronics* case.

Here it was a standard corporate fair. Let's try to grow revenues from customers. I don't know of a company that's in the customer business that doesn't have plans and initiatives to grow customer revenues.

But putting that aside for the moment, Confidential Witness 3 admits that he only joined the project in September after it had started. So he has no basis to speak to why it began. And the only allegation that plaintiffs make

connecting -- connected to motive is they say Project Big Fish was started.  Ms. Bharadwaj, in her little fireside chat in September, intentionally didn't reveal what was going on with user expansion because they wanted to get this project off the ground and running so that they could announce, hey, fine, there's a slowdown, but don't worry, we have a viable plan to address it.

And that allegation -- I'm going to say it's in paragraph 80.  I might be mistaken about that.  That's the only allegation that connects, that's new on motive.  And that allegation fails, and I don't think plaintiffs can amend to fix it because confidential witness, as a new low-level employee in one division of the company, which is discussed third out of the three in the shareholder report, he wouldn't have had any basis to know why Project Big Fish started, even if it was this sort of investigative project like Plantronics, which plaintiff --

THE COURT:  I think we're now -- thank you, Ms. Engel. I think you're now circling back to where you started this. And I appreciate that.

So I'll take one more look at this.  I am inclined to think that I'm going to give the plaintiffs one more shot after I've identified further the things that I think are lacking. And I will get an order out as soon as I can.

So thank you all.

**MS. ENGEL:**  Thank you very much, Your Honor.

**MR. HOOKER:**  Thank you, Your Honor.

(Proceedings adjourned at 2:54 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Tuesday, August 13, 2024




_____

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter